*RAMAH NAVAJO COMMUNITY SCHOOL*
*(Ramah Navajo School Board, Inc.) and*
*Borrego Pass Community School (Dibe Yahzi Habitin Olta, Inc.),*
Plaintiffs-Appellees
*vs.*
*THE NAVAJO NATION*
Defendant-Appellant

In the Supreme Court of the Navajo Nation

No. SC-CV-17-99

July 25, 2001

144

Marcelino R. Gomez, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for Appellant.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for Appellees.

Before YAZZIE, Chief Justice, AUSTIN and BEDONIE (by designation), Associate Justices.

Opinion delivered by YAZZIE, Chief Justice.

This appeal arises from a 1991 resolution of the Education Committee of the Navajo Nation Council adopting an apportionment plan for school board elections, and a complaint filed on April 28, 1992 to challenge the validity of that plan. The original plaintiffs were the Ramah Navajo School Board, Inc., Dibe Yahzi Habitin Olta, Inc. (Borrego Pass Community School), five other community schools, and the Rough Rock Chapter. The only remaining plaintiffs are the Ramah Navajo School Board and Borrego Pass Community School (hereinafter "plaintiff schools"). This is an appeal from a December 30, 1998 decision of the Window Rock District Court which declared that a Navajo Nation Council resolution (No. CF-29-98) waiving consultation with affected contract schools was invalid as to plaintiff schools, established temporary election standards for plaintiff schools, and found a Navajo Nation Justice Department attorney in contempt of court.

The five issues posed for resolution are these: First, whether this Court has jurisdiction over this appeal; Second, whether the District Court erred in holding that it had jurisdiction; Third, whether the District Court properly declared Navajo Nation Council Resolution No. CF-29-98 invalid as to schools; Fourth, whether the District Court's act of temporarily enjoining school board elections for plaintiff schools was proper; and Fifth, whether the contempt finding was proper.

We note that this is the fourth time this case has come before us. Rather than review the lengthy history of the litigation in detail, we refer the reader to *Rough Rock Community School v. Navajo Nation*, 7 Nav. R. 168 (Nav. Sup. Ct. 1995) ("Rough Rock School I"); *Rough Rock Community School v. Navajo Nation*, 7 Nav.R. 199 (Nav. Sup. Ct. 1996) ("Rough Rock School II"); and *Rough Rock Community School v. Navajo Nation*, 7 Nav. R. 313 (Nav. Sup. Ct. 1997) ("Rough Rock School III").

In Rough Rock School I, we held that Navajo Nation Election Code provisions properly applied to contract schools, certain qualifications for school board membership were void for vagueness, and that the 1991 apportionment plan did not require Navajo Nation Council approval. In Rough Rock School II, on a motion for reconsideration, we reiterated that the regulation of private contract schools in the Navajo Nation is valid, because they owe their existence to approval by the Navajo Nation as "Indian organizations" for funding under the 1975 Indian Self-Determination and Education Assistance Act. In Rough Rock School III, which was rendered after a trial and an order dismissing some of the contract schools' claims, we found that the 1991 election apportionment plan was invalid because of the failure of the Education Committee to consult with affected schools to adopt the plan, and the Navajo Board of Election Supervisors' failure to arbitrate a dispute over the plan. Today, in the appeal before us, we address a continuation of Rough Rock School III. The plaintiff schools correctly point out that the original docket number for the case in the District Court is No. WR-CV-121-92. The other docket number reflects a practice of closing cases and then reopening them using a new docket number. We are dealing with the original 1992 case.

I

The plaintiff schools question this Court's jurisdiction over this appeal, pointing to certain unspecified unresolved issues. They also point to the fact that when the District Court found an attorney to be in contempt of court, it did not impose sanctions. In the case of *Chuska Energy Co. v. Navajo Tax Comm'n*, we construed the word "final" in our appellate jurisdiction statute, 7 N.N.C. § 303 (1995 ed.), to mean the procedural stage where "all the substantial rights of the parties have been determined in the lower tribunal." 5 Nav. R. 98, 102 (Nav. Sup. Ct. 1986).

It appears that the substantial rights of the parties to this case were determined in the District Court's extensive (20 pages) order of December 30, 1998, and two supplementary orders dated January 11, 1999 and February 23, 1999. The schools have not identified any specific "substantial right" which is yet unresolved. The attorney who was found to be in contempt is not a party to this action, and the contempt proceeding is collateral to the underlying dispute. The attorney has not filed a notice of appeal from the contempt finding. Therefore, we have jurisdiction over this appeal.

II

The District Court did have jurisdiction. We will not get into questions of our rule on mandates, because the problem can be resolved without addressing that subject. Rough Rock School III was an appeal, after trial, from the dismissal of some of the schools' claims. In Rough Rock School III, we ruled that the 1991 apportionment plan was invalid and reversed the District Court's order dismissing the plaintiffs' claims. The reversal of the dismissal reinstated the claims that had been dismissed. That kept the case alive.

Furthermore, since the apportionment plan was invalid, the District Court had to do something when it was made aware that the Navajo Nation was attempting to conduct elections under a plan that we had declared invalid. In addition, a new event (passage of Navajo Nation Council Resolution No. CF-29-98) affecting the case arose. In light of these events, the District Court correctly ruled that it had the inherent authority to conduct a status review of the case and to grant relief based on the status of the case. That is part of the District Court's inherent power to implement adjudication. *See,* Felix F. Stumpf, Inherent Powers of the Courts 37-46 (National Judicial College 1994). Finally, there is a presumption against multiple litigation, where it can be avoided. All these factors lead to the conclusion that the District Court acted properly by maintaining jurisdiction over the case.

### III

Prior to discussing Navajo Nation Council Resolution No. CF-29-98, the subject of this appeal, we will address the question of when the Navajo Nation Council has the authority to overrule our decisions. We note the cases cited by plaintiff schools, having to do with legislatures adopting procedural statutes for specific cases which apply retroactively, and the cases cited by the Navajo Nation where Congress has legislatively overridden statutory interpretations by the United States Supreme Court. Both parties have stated the applicable law, but the principles that apply here are even more basic.

This case is not about the separation of legislative, executive and judicial powers in the Navajo Nation as such. It is about rights which everyone has that are fixed by the Navajo Nation Bill of Rights, 1 N.N.C. §§ 1-9 (1995 ed.). The case of *Landgraf v. USI Film Products,* 511 U.S. 244 (1994), illustrates the applicable principle. *See also, Eastern Enter. v. Apfel,* 524 U.S. 498 (1998). Landgraf involved a situation where a woman complaining of environmental sexual harassment under Title VII of the United States Civil Rights Act of 1964 was denied relief under the Act's limited remedial provisions. While her case was pending before the appeals court, Congress amended the 1964 Act to provide for greater remedies than those permitted by a prior United States Supreme Court decision. She asked the appeals court to apply the amendment to her case and remand to the trial court for a jury trial, but the appeals court rejected her claim. Her appeal to the United States Supreme Court came down to a simple matter of statutory construction. On one hand, "a court is to apply the law in effect at the time it renders its decision (internal quotation marks and citation omitted)," but on the other, "retroactivity is not favored in the law (brackets and internal quotation marks omitted)." 511 U.S. at 264. The question before the Supreme Court was which law should the appeals court have applied: the law in effect at the time the discriminatory conduct happened; or the law in effect (the amendment) at the time of its decision. *Id.* at 250.

A rule that is associated with the no-retroactivity principle is that

"congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result (internal quotation marks and citation omitted)." *Id.* The Court said that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265. It is based on the idea that people should have an opportunity to know what the law is and to act accordingly. *Id.* However, it is also based upon fundamental constitutional principles which are also found in the Navajo Nation Bill of Rights. They include the prohibitions against ex post facto legislation, the taking of vested property rights in violation of due process of law, and bills of attainder. *Id.* at 266-267; *See also,* 1 N.N.C. §3 (1995 ed.) (same prohibitions).

These are not simply federal constitutional provisions, as construed by the highest federal court, but the law of the Navajo Nation, adopted by the Navajo Nation Council and incapable of amendment without a vote of the Navajo People. The prohibition against retroactive legislation is not absolute, and "[r]etroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary." *Id.* at 267-268. The question to be asked when examining a statute for prohibited retroactivity is "whether the new provision attaches new legal consequences to events completed before its enactment," or whether the new provisions affect existing contract or property rights. *Id.* at 270-271. Legislation which impairs vested rights retroactively cannot stand.

Going now to Navajo Nation Council Resolution No. CF-29-98 (February 18, 1998), we see that there were "entirely benign and legitimate purposes" for it. Resolved Clause No. 1 of the Resolution is valid as a *prospective* legislative act. The Council was properly concerned about future litigation over school board decisions when we held that the reapportionment plan was invalid in Rough Rock School III, and this section ratified past school board decisions by declaring the validity of prior school elections. That was proper to prevent future litigation, although the de facto decisions of the school boards would be valid under a presumption that de facto (when a body cannot act *de jure*) school boards can conduct business.

The difficulties lie in Resolved Clause No. 2 of the Resolution, which validated the 1991 apportionment plan for 1998 school board elections, waived the prior requirement of consultation with affected schools, and changed the statutory terms of school board members from four to two years for that election. Resolved Clause No. 2 affected several substantial rights. First, vacancies in offices could have been addressed using the schools' existing articles of incorporation, bylaws, and resolutions. Second, candidates for the 1998 election for plaintiff schools had a vested statutory right to a four-year term. Third, plaintiff

schools, as litigants, had a vested right to rely upon our determination that the existing apportionment plan was invalid and a new one had to be based upon consultation. While other schools chose to abide by the Resolution, as was their right, the plaintiff schools chose to claim their existing rights under our decision in Rough Rock School III. To the extent the other schools chose to comply with Resolution No. CF-29-98 and conducted elections under it, the Resolution was prospective and valid. As to plaintiff schools, the District Court correctly declared Resolution No. CF-29-98 invalid.

## IV

We rendered our decision in Rough Rock III on January 9, 1998. The Council passed Resolution No. CF-29-98 on February 6, 1998 and the President of the Navajo Nation approved it on February 18, 1998. The District Court held a status conference on April 22, 1998, and the Navajo Nation filed a motion to reconsider an order which was entered after it. A special master appointed by the court was unable to act pending a decision on that motion. The Navajo Nation then filed a petition for a writ of superintending control on August 28, 1998. We exercised our discretion to deny that petition for extraordinary writ on October 1, 1998. In the meantime, the special master's attempts to get the schools, the Education Committee and the Board of Election Supervisors to reach an agreement failed, so the plaintiff schools petitioned the District Court for a contempt citation on October 6, 1998, and they separately asked the District Court to postpone the upcoming November 3, 1998 school board elections. The court held a hearing on the election question on October 26, 1998, six days after the motion was filed, and one week before the election, and entered an injunction postponing the school board elections after that hearing.

While the Navajo Nation complains that the classic tests for an injunction were not satisfied, we have the fact that there was no apportionment plan for the conduct of the election, the schools and the Navajo Nation had not reached an agreement on school board governance for that election, and the Navajo Nation was guilty of delay. There are two applicable maxims of equity which bar the Navajo Nation's objections on appeal: "He who seeks equity must do equity," and "He who comes to equity must come with clean hands." At the point when the court enjoined the election, the Navajo Nation did not "do" equity, and it was not in a position to seek equity. Nonetheless, the question of whether the granting of the injunction was proper or not is now moot. The period for which the elections were postponed has long expired, the elections have taken place, and the people elected to the offices have assumed their duties.

## V

Finally, we reach the issue of the contempt citation' against a Navajo Nation Department of Justice attorney. That question is not properly before us. No sanctions were imposed, and the attorney did not take an appeal. The finding of

contempt was personal to the attorney, collateral to the action, and neither party has any rights as a result of the contempt finding which are part of this appeal.

## VI

We assume that this long-standing dispute will be moot when a new reapportionment plan has been adopted under Navajo Nation Council Resolution No. CF-29-98, which properly provided for a new plan in the future. The parties have not advised us whether a new apportionment plan is now in effect.

We affirm the orders of the Window Rock District Court and remand for any further proceedings as may be appropriate or for closure of the District Court file.