*T. Ernest TSO*
Plaintiff-Appellee
*vs.*
*NAVAJO HOUSING AUTHORITY*
Defendant-Appellant

In the Supreme Court of the Navajo Natio

**No. SC-CV-10-02**

August 26, 2004

Patterson V. Joe, Esq., Flagstaff, Arizona, for Appellant.

Sampson Martinez, Esq., Gallup, New Mexico, for Appellee.

Before FERGUSON, Acting Chief Justice, and G. BENALLY, Associate Justice.

Opinion delivered by FERGUSON, Acting Chief Justice.

This case concerns the Navajo Housing Authority and the enforcement of a judgment of the Navajo Nation Labor Commission under the Navajo Preference in Employment Act. Based on our review of the pleadings and the record, we affirm the decision of the Commission. Our reasons are set forth below.

## I

Appellee was fired from his position with the Navajo Housing authority (NHA) after two separate accusations of sexual harassment. After his termination, Appellee brought a claim before the Commission under the Navajo Preference in Employment Act (NPEA) against NHA. While the case was pending, the Commission issued a subpoena at Appellant's request compelling Appellee to produce all unemployment check stubs from the period following his termination. After a hearing on the merits, the Commission found that NHA did not show by a preponderance of the evidence that it had just cause to terminate Appellee for sexual harassment. At the damages hearing, in response to questioning by the Commission, Appellee revealed that he had received $6,942 in unemployment benefits. Based on Appellee's delay in providing the unemployment benefits information, the Commission awarded Appellee back pay, but offset the award by the amount of unemployment benefits he received after his termination. The Commission also awarded Appellee 401k funds, sick leave, annual leave, attorney's fees, and costs. This appeal followed. Appellee filed a cross-appeal on the issue of offset.

## II

The issues in this case are (1) whether the Commission abused its discretion in concluding there was not enough evidence to prove sexual harassment, (2) whether NHA is immune from paying monetary damages as ordered by the Commission, and (3) assuming NHA is not immune, whether the Commission abused its discretion by offsetting its award of back pay against the unemployment benefits received by Appellee.

## III

The first issue in this case is whether the Commission abused its discretion in concluding there was insufficient evidence to prove sexual harassment, and therefore that Appellant did not fire Appellee for "just cause." Appellant asserts that the findings made by the Commission on the credibility of witness testimony were erroneous.

Rulings of the Commission are reviewed under an "abuse of discretion"

standard. *Manygoats v Atkinson Trading Co.*, 8 Nav. R. 337 (Nav. Sup. Ct. 2003). Among other things, the Commission abuses its discretion when it makes a mistake as to applicable law, that is, makes an erroneous legal conclusion, or if its factual findings are not "supported by substantial evidence." *Id.* We review the legal conclusions *de novo*, with no deference given to the Commission's interpretation of the law. *Cf. Navajo Housing Authority v. Bluffview Resident Management Corp.*, 8 Nav. R. 402, 412 (Nav. Sup. Ct. 2003) (review of discretionary decisions of trial courts). Our review of the factual findings is more deferential. This Court will find that a decision is "supported by substantial evidence" where, after examining the relevant evidence, a "reasonable mind could accept [the evidence] as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence." *Silentman v. Pittsburg and Midway Coal Mining Co.*, 8 Nav. R. 306, 312 (Nav. Sup. Ct. 2003). We review the factual findings concerning Appellee's alleged sexual harassment under this standard. However, whether the facts once found constitute "just cause" as required by the NPEA is a matter of statutory interpretation, and therefore a legal conclusion that we review *de novo*.

The Commission, after holding a hearing and weighing testimony, concluded that the testimony did not support a finding of sexual harassment. The Commission based its conclusion on testimony from Appellee and his accusers. Upon weighing the credibility and sufficiency of this testimony, the Commission ruled in favor of Appellee. This decision is "supported by substantial evidence" as the conclusion is supported by the testimony. Even though it may be possible to draw the opposite conclusion from the evidence, we give due deference to the Commission's judgment as to the credibility and weight of the testimony, and find that there was substantial evidence to reach the Commission's ultimate decision. Lacking any other facts to support the termination, the Commission's legal conclusion that Appellant did not fire Appellee for "just cause" therefore is also correct.

## IV

The second issue is whether NHA is immune from paying monetary damages mandated by a Commission judgment. As previously stated, we review the Commission's legal conclusions *de novo* with no deference given to the Commission. Appellant argues that the Commission cannot award back pay against it because NHA is immune from enforcement of a monetary judgment.

As we have previously noted, NHA does not have sovereign immunity from a lawsuit, but NHA generally is exempt from levy and execution. *See* 6 N.N.C. §§ 616, 623; *Bluffview*, 8 Nav. R. at 415; *Navajo Housing Authority v. Howard Dana and Associates*, 5 Nav. Rep. 157, 159 (Nav. Sup. Ct. 1987). The Navajo Nation Council (Council) waived NHA's sovereign immunity, but there is a separate section in the Navajo Nation Code that provides for an exemption from execution or "other judicial process":

> All property, including funds acquired or held by the Authority pursuant to this subchapter, shall be exempt from levy and sale by virtue of an execution or other judicial process against the same nor shall any judgment against the Authority be a charge or lien upon such property.

6 N.N.C. § 623 (Section 623).

The question in this case is not whether the Commission has jurisdiction over NHA and can award back pay, but whether Appellee may enforce the Commission's back pay award against NHA. Although in *Dana* we referred to the Section 623 exemption as "immunity," 5 Nav. R. at 159, the exemption is not a grant of "sovereign immunity" to NHA. Sovereign immunity is immunity of a governmental body "from being sued in its own courts without its consent." BLACK'S LAW DICTIONARY 753 (7th ed. 1999). As previously stated, the Council waived the sovereign immunity of NHA from suit in Section 616, granting jurisdiction to the courts of the Navajo Nation and the Commission to hear complaints against NHA. The exemption in Section 623 does not prohibit monetary judgments, but simply creates a limitation on the enforcement of such judgments. We have recognized similar limitations, such as a general prohibition on garnishment of wages to enforce monetary judgments, except to enforce a child support order. *See Heredia v. Heredia*, 4 Nav. R. 124, 127 (Nav. Ct. App. 1983). We reject our previous representation in *Dana* that the exemption in Section 623 is "sovereign immunity."

The real issue in this case is whether the NPEA overrides the general exemption in Section 623. In considering the relationship between those two statutes, we emphasize the difference between sovereign immunity and a statutory exemption. Ordinarily, a legislative body must waive sovereign immunity through explicit language in the statute. *See, e.g., United States v King,* 395 U.S. 1, 4 (1969). However, as Section 623 does not address the sovereign immunity of NHA, we do not require the same explicit expression to find a waiver of the statutory exemption. We hold that the Navajo Nation Council may override a statutory exemption if there is clear intent in the plain language and/or structure of the later law to include the exempted individual or entity in a

generally applicable regulation.[1]

Under this test, we find clear intent to override NHA's general exemption from enforcement of a monetary judgment in the NPEA. In that act the Council defines the term "employer" to include "all persons, firms, associations, corporations, and the Navajo Nation and all of its agencies and instrumentalities who engage the services of person for compensation, whether an employee, agent, or servant." 15 N.N.C. § 603(B). NHA is clearly included within the NPEA definition of employer. Employers, referred to in the Commission's proceedings as "respondents," or persons "against whom a complaint is filed," that violate the NPEA are subject to remedies to make right the wrongful termination. Under the NPEA, if the respondent violates the act, the Commission "shall issue one or more remedial orders, including without limitation ... back-pay." 15 N.N.C. § 612(A). The word "shall" mandates that the Commission issue a remedial order against the employer, without any restrictions as to the identity of the employer, and includes "without limitation" back pay as a possible remedy.

[1] As the test we announce today requires clear intent in the plain language or structure of a statute to override an exemption, we do not fill any omissions or interpret ambiguous language under *Diyin Nohookáá' Dine'é Bi Beehaz'áanii* (Navajo Common Law). Our general rules of statutory construction changed with Council passage of Resolution Nos. CN-69-02 (November 13, 2002) ("Amending Title 1 of the Navajo Nation Code to Recognize the Fundamental Laws of the *Diné*") and CO-72-03 (October 24, 2003) (amending Title VII of the Code), which mandate that we interpret statutes consistent with Navajo Common Law. We have applied this mandate when the plain language of a statute does not cover a particular situation or is ambiguous, but have applied the plain language directly when it applies and clearly requires a certain outcome. *Compare Judy v. White*, 8 Nav. R. 510, 541 (Nav. Sup. Ct. 2004) (stating that the court is bound by plain language of Sovereign Immunity Act), *Fort Defiance Housing Corp v. Allen*, 8 Nav. R. 492, 498 (Nav. Sup. Ct. 2004) (declining to apply Navajo Common Law when plain language is clear), and *Chapo v. Navajo Nation*, 8 Nav. R. 447, 458–60 (Nav. Sup. Ct. 2004) (applying plain language of Sovereign Immunity Act) with *Thompson v. Greyeyes*, 8 Nav. R. 476, 487–88 (Nav. Sup. Ct. 2004) (interpreting Domestic Abuse Prevention Act to avoid conflict with Navajo Common Law), and *Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 474–75 (Nav. Sup. Ct. 2004) (applying Navajo Common Law to Forcible Entry and Detainer Act when ambiguous and when procedure for filing appellate bond is not provided by statute). This approach flows from the relationship between the judicial and legislative branches in our current Navajo form of government, as it is ultimately the responsibility of the Navajo Nation Council to make policy for the Navajo people, and our Court to apply it when clear and valid. *See White*, 8 Nav. R. 539–40 (declining to apply attempted legislation when improperly passed); *Allen*, 8 Nav. R. at 499 (applying plain language of statute over court rule). When unclear, we apply the tools of statutory interpretation given to us by the Council, which require us to give meaning to the Council's ambiguous language consistent with the fundamental principles of the Navajo people. Here, we expect the Council to have clearly spoken to override NHA's clear exemption from forcibly paying a monetary judgment, as the existence or waiver of that exemption significantly affects the financial viability of a necessary tribal program.

Further, the Council created a cause of action under the NPEA to enforce a Commission judgment against an employer, and did not exempt NHA from that action:

> The person or party whose favor a Commission's decision providing for remedial action is entered shall have the right to seek legal and/or equitable relief in the District Courts of the Navajo Nation to enforce the remedial action . . . Any attempted enforcement of a Commission order or decision directing payment of money by the Navajo Nation or any of its governmental entities shall, with respect to the extent of any liability be governed by the Navajo Sovereign Immunity Act.

15 N.N.C. § 612(C). Under the plain language of the NPEA, the only restriction on enforcement of a post-judgment order applies to enforcement against the Navajo Nation, which must proceed under the procedural guidelines of the Navajo Sovereign Immunity Act, 1 N.N.C. § 551 *et seq.*. The inclusion of this special procedure, which applies solely to the parts of the Navajo Nation protected by the Sovereign Immunity Act, and therefore not NHA, *see Bluffview*, 8 Nav. R. at 415, is the only section of the NPEA that provides for a different procedure for a certain employer. As there are no other distinctions made based on the identity of the employer, and no special procedure established for enforcement against NHA, the NPEA places NHA within reach of the same procedures and remedies as all other employers. The absence of any distinction between NHA and other employers is clear intent by the Council to subject NHA to the general procedures used to enforce the NPEA.[2]

The general intent of the statute supports the conclusion that the Council intended to place NHA within the reach of the remedies in the NPEA. The purpose of the NPEA is clearly stated in the statute: "to protect the health, safety, and welfare of Navajo families." 15 N.N.C. § 602(A)(6). The requirement of just cause for firing springs from this purpose, as it seeks to prevent wrongful terminations and maintain the welfare of Navajo families by keeping wage

2 Though not mentioned by NHA, we are aware of the fact that Section 623 originated as a provision from a model ordinance required by the federal Department of Housing and Urban Development (HUD) to receive housing funds, *See* 25 C.F.R. § 905, Subpart A. App I, Article VII, § 7 (1986). This federal requirement might preclude the Council from overriding it without federal approval, even if, as we find here, the Council intended to do so. *See* 25 C.F.R. § 905.109(d) (barring any "substantive change" to section without written approval of HUD). However, the model ordinance applied to federal housing funds before the passage of the Native American Housing Assistance and Self-Determination Act of 1996 (NAHASDA), 25 U.S.C. §§ 4101 *et seq.*, when Congress changed the process and requirements for receiving money for Indian housing projects. After NAHASDA, there is no explicit federal requirement that we have located that continues to bar levy and execution. Though the exemption continues as a matter of tribal law, it does not appear to continue as a federally-mandated requirement for federal housing funds, and therefore does not bar tribal legislation overriding it when considered necessary to further Navajo public policy.

earners employed. The Council reinforced and gave further weight to their intent with the following statement: "It is the intention of the Navajo Nation Council that the provisions of this Act be construed and applied to accomplish the purposes set forth above." 15 N.N.C. § 602(B). The broad principles of family welfare written into NPEA by the Council, and the stated desire for the NPEA to accomplish these goals, means that Council intended to provide broad coverage to employees on the Navajo Nation, including necessary power for the Commission to set wrongful firings right through enforcement of back pay awards against employers not specifically excluded.

If this Court were to find the 623 exemption is not overridden by NPEA, we would severely undermine the intent of the Council to protect the welfare of tribal members. An award of back pay would be worthless without the ability to enforce it against the employer. A finding that upholds NHA's exemption in opposition to the intent and language of NPEA would result in a large number of workers being outside of the NPEA's protections enacted to protect all workers. We cannot endorse such an exemption given the clear language of the NPEA. The Commission did not err, and NHA must pay back pay to Appellee.[3]

## V

We are left with the issue in Mr. Tso's cross-appeal of whether the Commission should have reduced the back pay award by the amount of unemployment benefits he received. The Commission offset the back pay of Mr. Tso (Cross-Appellant) by the value of unemployment benefits he received after he was wrongly terminated. Cross-Appellant seeks to overturn this decision, and requests he be awarded full back pay.

As discussed above, back pay is included among the remedies available to the Commission in fashioning an equitable reward under the NPEA. The NPEA does not provide the Commission with a particular formula or method for determining the appropriate level of back pay. The Council, by including back pay as a remedy, but not specifying any method or guidelines for calculation, left the Commission with discretion to shape an award of back pay based on the unique facts of each case. Under our general rules of statutory construction that mandate the use of Navajo Common Law to fill omissions or interpret ambiguities, *see supra* n. 1, recognizing Commission discretion is consistent with the flexible concept of *nályééh*, which seeks to make a wronged person whole based on each unique situation. *See Benally v. Mobil Oil*, 8 Nav. R. 387, 401 (Nav. Sup. Ct. 2003). The Commission's decision whether or not to offset back pay therefore is within its discretion in creating a fair remedy. An administrative agency abuses its discretion by a decision that is "unreasonable and arbitrary."

3 We emphasize that our holding in this case as to the application of the Section 623 exemption is restricted to Commission judgments made under the NPEA. The protections of Section 623 recognized in *Dana* still govern attempted execution of any other type of judgment against NHA.

*Manygoats,* 8 Nav. R. at 19. The question is then whether the Commission acted unreasonably and arbitrarily in offsetting the back pay award.

We hold the Commission did not abuse its discretion. The Commission found that Cross-Appellant and his counsel concealed information concerning his receipt of unemployment benefits, even though such information was requested in a subpoena issued by the Commission. The Commission concluded that Appellee's compensation, including both unemployment benefits and offset back pay, a sum equal to the salary he would have received had he not been fired, was equitable considering the conduct of Appellee and his counsel. This use of equity is not "unreasonable and arbitrary," but was based on the Commission's sound consideration of the fairness of awarding such benefits when counsel did not, in the opinion of the Commission, comply with a valid subpoena. Whether this Court would have imposed such a punishment is not a proper consideration under an abuse of discretion standard, and we find this decision and its justification to be properly within the discretion of the Commission.

## VI

The Commission did not abuse its discretion in finding there was insufficient proof to substantiate accusations of Appellee's sexual harassment, nor did it abuse its discretion in awarding back pay, offset by unemployment benefits, to Appellee. The order of the Commission is hereby AFFIRMED.