OPINION

This case concerns whether a monetary judgment against the Navajo Housing Authority (NHA) may be enforced, or whether sovereign immunity, Navajo statutory exemption from execution, or a circular issued by the U.S. Office of Management and Budget (OMB) prohibits the enforcement. The Court holds that only certain NHA funds are exempt from execution, and that the judgment must be satisfied with those that are non-exempt. This matter is remanded for findings accounting for the NHA’s exempt and non-exempt income.
I
This appeal arises from Appellee’s attempt to enforce a judgment against the Navajo Housing Authority (NHA). This is the second time that this case has come before us, and rather than recount the lengthy history, we detail only the facts relevant to this appeal. Mr. Tso won a monetary award of back pay and other damages against the NHA in the Labor Commission in February 2002. That award was appealed in Tso v. Navajo Housing Authority, No. SC-CV-10-02, 5 Am. Tribal Law 438, 2004 WL 5658576 (Nav.Sup.Ct.2004) (Tso 1). In Tso 1, we affirmed the judgment against the NHA, and restated that NHA does not have sovereign immunity from lawsuit, but that it is generally exempt from levy and execution. Id. We also considered the relationship between the NPEA and NHA’s general exemption against execution in 6 N.N.C. § 626. We held that there was “clear intent to override NHA’s general exemption from enforcement of a monetary judgment in the NPEA” and that therefore, NHA was not immune from paying the monetary damages as ordered. Tso 1, 5 Am. Tribal Law at 438, 443, 2004 WL 5658576 at *3.
Two pieces of legislation were enacted by the Navajo Nation Council following our holding in Tso 1. First, the Sovereign Immunity Act was amended to expressly include the NHA within the definition of “Navajo Nation.” Resolution CO-55-04, October 19, 2004 (now codified at 1 N.N.C. § 552(P)). Then in August 2005, the NHA’s plan of operation was amended, including the sections relating to its sovereign immunity and exemption from execution and judgments. Resolution CJY-51-05 (July 25, 2005) (now codified at 6 N.N.C. §§ 601 et seq.). Those amendments were intended to prohibit attempts to override the prohibition on execution, and to require specific reference to Section 623 for any exception to be effective.
In February 2005 Tso sought to enforce his judgment against the NHA in the lower court. In March 2006 the lower court entered a final judgment in favor of Tso, and issued a writ of execution to levy NHA’s bank account in the amount of $63,915.94.
The NHA now appeals both the final judgment and its enforcement.
II
The issues in this case are 1) whether the amended plan of operation changes the discussion and result in Tso 1 and 2) whether a circular issued by the federal OMB prohibits the satisfaction of the judgment against NHA.
*603 An issue that is not before the Court is a general reconsideration of Tso 1. The NHA urges us to review Tso 1 not only in light of subsequent legislation and that legislation’s alleged retroactivity, but also to reconsider Tso 1 in general because it “veered substantially from prior precedent and generally accepted legal principles.” Appeal Brief of the Defendants-Appellants, 9/18/06, p. 9:11-13. The Court denied reconsideration of Tso 1 on October 13, 2004 in SC-CV-10-02, and declines to review now another request for reconsideration that is based on the original arguments. The issue of whether changes made to the NHA’s Plan of Operation subsequent to the opinion in Tso 1 are applicable to the judgment against the NHA will be considered.
Ill
The NHA argues that the current status of its plan of operation is an absolute exemption from all execution on any NHA property, without exception. The NHA argues that the new language became effective immediately upon being signed by the President, and that the courts must apply it to all pending cases pursuant to 7 N.N.C. § 204(A). We disagree.
We have discussed retroactive application of legislation in previous opinions. See Keith v. Alfred, 3 Nav. R. 191 (Nav.Sup.Ct.1981); Ramah Navajo Community School v. Navajo Nation, No. SC-CV-17-99, 3 Am. Tribal Law 502, 2001 WL 36173241 (Nav.Sup.Ct.2001); Phillips v. Navajo Housing Authority, No. SC-CV-13-05, 6 Am. Tribal Law 708, 2005 WL 6236356 (Nav.Sup.Ct.2005). The rule is that “[a] Council resolution will not have retroactive effect unless its language requires that result.” Phillips, No. SC-CV-13-05, 6 Am. Tribal Law at 711-12, 2005 WL 6236356 at *3-4, citing Ramah Navajo Community School. In this case, the language within the resolution amending the NHA’s plan of operation states that it “shall become effective immediately.” We conclude that Council intended for the section 623 amendments to exempt not only future judgments but to exempt execution on any pending judgment as well.
But Council’s intent for a statute to apply retroactively is not the only consideration. Our Bill of Rights prohibits the deprivation of any fundamental individual right without the due process of law by ex post feudo law. 1 N.N.C. § 3. Not all ex post facto legislation is prohibited. Ex post facto legislation intended to correct mistakes, respond to emergencies, or to give effect to a positive beneficial new statute may “serve entirely benign and legitimate purposes.” Ramah Navajo Community School, No. SC-CV-17-99, 3 Am. Tribal Law at 506, 2001 WL 36173241 at *3. Another type of ex post facto legislation is when the Council approves legislation in direct response to this Court’s opinion. Such legislation is appropriate, subject to some limitations, except when it seeks to divest individuals or groups of a previously-obtained right. The question to be asked is “whether the new provision attaches new legal consequences to events completed before its enactment, or whether the new provisions affect existing contract or property rights.” Id, at 506-07, 2001 WL 36173241 at *3-4. Mr. Tso has obtained a monetary judgment which was affirmed by this court in Tso 1. That judgment is a property right. We find that the amendments to the plan of operation attempt to override the appellee’s property right, and that therefore the amendments are invalid with respect to Mr. Tso’s judgment.
NHA urges that the amendments to section 623 were merely a clarification of an *604 exemption that “has existed for almost half a century,” and were not enacted to punish Tso. Appeal Brief of the Defendants-Ap-peUawts, p. 21:1. That the NHA has some exemption against execution is not disputed. The general and limited nature of the NHA’s statutory exemption, and its distinction from sovereign immunity, has been discussed by this Court. See NHA v. Dana, 5 Nav. R. 157 (Nav.Sup.Ct.1987) (finding waiver of exemption by contract); NHA v. Bluffview et al., No. SC-CV-35-00, 4 Am. Tribal Law 700, 2003 WL 25794033 (Nav.Sup.Ct.2003); Tso v. NHA No. SC-CV-10-02 (Nav.Sup.Ct. August 26, 2005); Phillips v. Navajo Housing Authority, No. SC-CV-13-05, 6 Am. Tribal Law 708, 2005 WL 6236356 (Nav.Sup.Ct. 2005). We have also already answered that the Navajo Preference in Employment Act (NPEA) overrides NHA’s general exemption against execution in section 623. Tso 1. Therefore we reject the assertion that the amendments seek simply to “clarify” the exemption. Instead, we conclude that the amendments to the NHA’s plan of operation were intended to broaden the NHA’s exemption so that it is no longer overridden by the NPEA. Section 623’s amended language and intent is not before us today, and we make no comment about its prospective applicability[1]. Whether the 2005 amendments to the plan of operation in fact creates an exemption against execution that overrides the NPEA may be considered if that issue is ever squarely before this Court.
With respect to Mr. Tso and the judgment he received against the NHA, the section 623 amendments are invalid. In Tso 1 we held that section 623 did not exempt NHA from satisfying Mr. Tso’s judgment. If given effect as intended by Council, amended section 623 would exempt the NHA from satisfying the judgment. Mr. Tso’s monetary judgment and his ability to enforce it against the NHA is a property right, and the amended section 623 purportedly divests him of that right. We conclude that as applied to Mr. Tso’s judgment and its enforcement, NHA’s amended plan of operation acts as a prohibited ex post facto law.
IV.
The current status of the NHA’s plan of operation does not affect the status or enforceability of Tso’s judgment. The second issue is whether federal law, specifically OMB Circular A-87, prohibits the NHA from satisfying the judgment.
The Native American Housing Assistance and Self-Determination Act (NA-HASDA) provides that an annual appropriation be made by Congress, and be distributed by the Department of Housing and Urban Development (HUD) to recipients such as the NHA.[2] Nothing in NA-HASDA directly prohibits use of granted *605 funds for the payment of civil judgments against the grantee, nor does NHA argue that anything in its annual contribution contract prohibits such payments.[3] Instead, NHA argues that all grant recipients are subject to 2 CFR Part 225, Cost Principles for State, Local, and Indian, Tribal Governments (OMB Circular A-87) (circular), and that that circular prohibits the payment of the civil judgment.
The circular “establishes principles and standards for determining costs for Federal awards carried out through grants, cost reimbursement contracts, and other agreements with State and local governments and federally-recognized Indian tribal governments.” Circular, at § 225.5, Purposes. Appendix B to the circular discusses selected items of cost, and identifies those items as either allowable or unallowable. One of the items of cost discussed in the appendix is Fines and penalties. The language states that:
Fines, penalties, damages, and other settlements resulting from violations (or alleged violations) of, or from failure of the governmental unit to comply with, Federal, State, local, or Indian tribal laws and regulations are unallowable except when incurred as a result of compliance with specific provisions of the Federal award or written instructions by the awarding agency authorizing in advance such payments.
Appendix B to 2 CFR Part 225, No. 16.
There is no question that any federal grant or federal award received by NHA is subject to the standards in the circular. The judgment against the NHA was a result of the NHA’s violation of the Navajo Preference in Employment Act, which is a Navajo statute. Pursuant to the language of the circular, this is not an allowable cost. Therefore, the NHA may not use federal money to satisfy the judgment against it.
But our analysis does not end there. We hold that the federal regulations prohibit NHA from expending federally-granted money in satisfaction of the judgment, not that NHA is exempted from satisfying the judgment. If the NHA possesses or can obtain non-federally-granted money, that money must be used to satisfy the judgment in favor of Mr. Tso. Nothing in Navajo law, as it was in effect for the purposes of this case, relieves the NHA from its responsibility to Mr. Tso.
While nothing in our Navajo statutory law relieves the NHA from its responsibility to Mr. Tso, there are central principles of Diñé, bi’d‘ooT>i>il (the Navajo Life Way) that affirmatively require the NHA to satisfy the judgment. The NHA has been found responsible for injuring or causing damage to Mr. Tso, and the amount of damages has been determined. Whether that amount is considered “damages,” “restitution,” or “nályééh” is unimportant here; the important thing is that the NHA have respect for others and for decisions made by the Labor Commission, the lower court, and this Court. Dine bi’ó‘ool’>i>ü recognizes our relationships to each other and the responsibilities that those relationships create. There was an employer-employee relationship between the NHA and Mr. Tso. That relationship created duties and responsibilities between the NHA and Mr. Tso. It has been determined that the NHA wrongfully damaged that relationship. There are many ways to address a damaged relationship, and in this case the issue was addressed formally by the Labor Commission and the courts. *606 The NHA now has the responsibility to compensate Mr. Tso as directed by the courts. To disregard the responsibilities of a relationship, or to refuse to make amends as required, is shameful and without rationale. See Arizona Public Service Co. v. Office of Navajo Labor Relations, 6 Nav. R. 246 (Nav.Sup.Ct.1990) (recognizing the saying to describe someone who has misbehaved as “He acts as if he had no relatives.”).
The NHA argues that the “U.S. Department of Housing and Urban Development ... has stated that all of the NHA’s funds are federal funds.” Appellants’ Appeal Brief, 9/18/06, p. 28:14-17 (citing to a Sept. 7, 2005 Final Monitoring Review Report attached to its brief as Exhibit C). This is a broad and unsupported claim in an effort to circumvent its responsibility to Mr. Tso, and is not the language of the report as submitted to this Court. The report states that “all income generated from the use of 1937 Housing Act and IHBG funds for the period of October 1,1997, through September 30, 2004, is program income.” Id, Exhibit C. That same report reveals that the NHA lacks a system to accurately distinguish money attributable to various classifications of funds, that it is “unable to determine its non-program income from Proceeds of Sale.” Id. There is no discussion in the excerpt filed by the NHA stating that all of the NHA’s income is federally-granted. Instead, the report suggests that non-program income does exist but could not be accurately accounted at the time of the report.
We hold that the NHA must satisfy Mr. Tso’s judgment against it with non-federally-granted money. There has been no evidence presented to this court to determine how much, if any, of the NHA’s funding derives from other sources, or whether the NHA has an independent power to raise revenues that could be used to satisfy the judgment. Therefore, we remand this matter to the lower court for those findings.
V
The final decision of the lower court is affirmed with respect to the amount owed to Mr. Tso. The writ of execution issued on April 17, 2006, however, is vacated. A writ of execution “must specify the particular unrestricted, and nonexempt property” subject to seizure. 7 N.N.C. § 706 (emphasis added). The April 17th writ was issued without consideration of whether the funds available in the bank account were nonexempt. This matter is remanded to the lower court for proceedings, and to issue appropriate orders In compliance with this opinion.
We strongly recommend that the lower court require testimony directly from the NHA’s administration about the extent of their non-exempt funds. The Final Monitoring Review Report relied on by the NHA concludes that the NHA lacks an accounting system for differentiating exempt and non-exempt funds. This Court presumes that the deficiency has been rectified since 2005, and that NHA is now in compliance with the requirement that it be able to account for their income sources. Therefore, the lower court should be able to make the required findings with respect to non-exempt funds without extensive hearings. We also suggest that even if it becomes evident that all of the NHA’s current income is exempt, that the lowrer court needs to make findings about the NHA’s ability to raise non-exempt money from which to pay its civil judgments, such as through fund raising or self insurance programs.
The Labor Commission entered a judgment in Mr. Tso’s favor in February 2002, and Mr. Tso has been waiting nearly 6 years to enforce it. The judgment has *607 been affirmed, and NHA must now pay it. Appropriate proceedings on remand should be held without unreasonable delay. We direct that an initial accounting of nonexempt funds and the NHA’s ability to raise or otherwise obtain non-exempt funds be completed within 120 days of this remand.

. Should the amendments' substantive validity come before us, we may consider the impact of the NHA's plan of operation, whether the Council may effectively judgment-proof an entity, and whether the amendments can stand in light of protections guaranteed within our statutes and required by Diñé bi beena-haz' áanii.

. In 1961 the Public Housing Administration initiated programs to permit Indian Housing Authorities to participate under the Indian Housing Act of 1937, which authorizes loans to public housing agencies lor development or administration of public or low rent housing. In 1988 the Indian Housing Act created a separate Office of Native American Programs within the Department of Housing and Urban Development (HUD). In 1996 the Native American Housing Assistance and Self-Determination Act (NAHASDA) was enacted, to increase tribal ability to tailor housing programs to community needs. Under NAHAS-DA, a tribally designated housing entity is a grant recipient; in the Navajo Nation, that designated entity is the NHA.

. The NHA had the opportunity, but chose not to raise any other arguments in defense of their proposition that they were fully exempt against execution because of Navajo law, federal law or any other alleged preclusions.