**Blaze Construction, Inc.,
a Blackfeet Charter Corporation,
Plaintiff/Appellant,
v.
Crownpoint Institute of Technology,
a Navajo Nonprofit Corporation,
Defendant/Appellee.
Decided October 29, 1997**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and *R.A. BEGAYE (*sitting by designation), Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock Navajo Nation (Arizona), for the Appellant; and Genevieve K. Chato, Esq., Kayenta, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

The Navajo Nation Council granted the Appellee, Crownpoint Institute of Technology (CIT), immunity from suit in July 1995. The issue before us is whether the Navajo Sovereignty Act, 1 N.N.C. §§ 551-555 (1995), protected CIT from suit on a breach of contract claim that accrued prior to July 1995. We hold that CIT was not immune from suit.

### I

In January 1994, CIT awarded Blaze Construction, Inc. (Blaze) a contract for a campus street and parking lot rehabilitation project. After the project was completed, a dispute arose over the amount of money still owed Blaze. In April 1995, the parties agreed that Blaze would accept $114,942.95, instead of the $169,266.00 it claimed, if CIT would pay within a short period of time. CIT paid Blaze $43,104.36 by July 12, 1995, but did not make additional payments.

On January 22, 1996, Blaze sued for debt on a contract in the Crownpoint District Court based on the April 1995 agreement. Blaze did not follow the prerequisites for instituting suit against the Navajo Nation under the Navajo Sovereign Immunity Act, 1 N.N.C. § 555(A)-(C). The district court dismissed the case for lack of subject matter jurisdiction based on Blaze's noncompliance

with the Act's notice provisions. Blaze appealed the dismissal.

CIT originated as a program within the Navajo Nation Division of Labor under authority of a Navajo Nation Council resolution. Navajo Nation Council Res. No. CN-73-76 (November 11, 1976). The program operated a facility known as the Crownpoint Skill Center at Crownpoint, Navajo Nation (New Mexico). The facility was used to train workers on vocational skills through subcontracts with primarily union-affiliated training organizations. The facility closed in September 1981 after the Navajo Nation Division of Labor phased out subcontracted training programs.

In November 1981, the Advisory Committee of the Navajo Nation Council passed a resolution to reopen the facility as the Navajo Skill Center and adopt its plan of operation. Advisory Committee Res. No. ACN-147-81 (November 18, 1981). At the time, the Committee had the power, granted by the Navajo Nation Council, to create any Navajo Nation entity by adopting its plan of operation. 2 N.N.C. § 343 (1984-85 Supp.). The Center's plan of operation was subsequently codified at 15 N.N.C. §§ 1201-09 (1984-1985 Supp.). Section 1201 stated as follows: "The Navajo Skill Center is hereby established as an entity of the Navajo Nation." 15 N.N.C. § 1201.

In 1987, the Advisory Committee amended the Navajo Skill Center's plan of operation. Advisory Committee Res. No. ACJA-7-87 (January 2, 1987). The amendment changed the Center's name to the Crownpoint Institute of Technology and declared CIT "a non-profit, non-membership corporation, wholly owned by the Navajo Tribe...." Plan of Operation at Art. II.A. Moreover, the amended plan of operation explicitly stated that CIT was "to be considered part of 'The Navajo Nation' for purposes of the Navajo Sovereign Immunity Act (citations omitted)." *Id.* at Art. II.B. The Advisory Committee ceased existence as a standing committee of the Navajo Nation Council in December 1989, upon passage of the Title Two amendments to the Navajo Nation Code. *See* Navajo Nation Council Res. No. CD-68-89 (December 15, 1989).

On July 21, 1995, the Navajo Nation Council amended CIT's plan of operation and codified it at 15 N.N.C. §§ 1201-09 (1995). Navajo Nation Council Res. No. CJY-68-95 (July 21, 1995). Section 1202(A) retains the language of Article II.A of the previous plan of operation. At section 1202(B), the Council declared CIT a "part of the 'Navajo Nation' for purposes of the Navajo Sovereign Immunity Act (citations omitted)." 15 N.N.C. § 1202(B) (1995). This marks the first time in CIT's history that the Navajo Nation Council (and not the Advisory Committee) clothed CIT with immunity under the Sovereign Immunity Act.

## II

There is a longstanding principle that a sovereign cannot be sued without its express consent. The Navajo Nation, as a sovereign nation, enjoys immunity from suit. See Navajo Sovereign Immunity Act, 1 N.N.C. §§ 551-555. While

other sovereigns' immunities have been waived to some extent, the Navajo Nation's immunity remains substantially intact. One reason for this is the need to protect scarce Navajo Nation resources. 1 N.N.C. § 554(A).

Immunity from suit usually raises two issues: the ability to sue and the ability to collect on a judgment. Our courts acknowledge the due process right of access to the courts for relief, particularly in civil rights cases. Therefore, a liberal construction of the Navajo Sovereign Immunity Act for prospective relief under principles of equity is appropriate. However, caution is the norm when it comes to retroactive monetary relief. The reason is simple — no government can risk its assets because they are needed to serve the public. The standard Indian Reorganization Act corporate charter (and there is no such Navajo Nation organization) waives immunity from suit but limits recovery to assets pledged. That same concept is embodied in the Navajo Sovereign Immunity Act, using insurance, self-insurance, and other coverage. Therefore, the Navajo common law axiom of thinking carefully and proceeding cautiously when dealing with immunity from suit issues is proper.

The Sovereign Immunity Act balances the rights of parties seeking redress against the Navajo Nation with the need to safeguard the Nation's ability to perform its governmental functions without undue interference. *Id.* The Act allows some exceptions to the Navajo Nation's immunity from suit. However, a party initiating suit against the Nation must comply with certain procedural prerequisites. 1 N.N.C. § 555. Here, the district court found that the Sovereign Immunity Act insulated CIT and dismissed Blaze's complaint for failure to satisfy those conditions. On appeal, Blaze asserts that the district court erred because the Navajo Nation Council had not granted CIT immunity from suit when its cause of action accrued.

## A. The Sovereign Immunity Act

For purposes of immunity from suit, the Navajo Nation Council chose to define the term "Navajo Nation." 1 N.N.C. § 552. In other words, the Navajo Nation Council made a deliberate decision to grant immunity from suit to certain entities, collectively known (and listed in the Code) as the "Navajo Nation." *Id.* Thus, Blaze must follow the Sovereign Immunity Act's prerequisites for filing suit if CIT was included in the Act's definition of "Navajo Nation" in April 1995. The applicable portion of the Sovereign Immunity Act provides as follows:

> For the purposes of this subchapter "Navajo Nation" means:
> A. The Navajo Nation Council;
> B. The President, Navajo Nation;
> C. The Vice-President, Navajo Nation;
> D. The Delegates to the Navajo Nation Council;
> E. The Certified Chapters of the Navajo Nation;
> F. The Grazing Committees of the Navajo Nation;
> G. The Land Boards of the Navajo Nation;

H. The Executive Branch of the Navajo Nation Government;
I. The Judicial Branch of the Navajo Nation Government;
J. The Commissions of the Navajo Nation Government;
K. The Committees of the Navajo Nation Council;
L. The Legislative Secretary of the Navajo Nation Council;
M. The Enterprises of the Navajo Nation;
N. Navajo Community College.

*Id.* CIT was not included in the definition of "Navajo Nation" for immunity from suit purposes during the relevant time period.

CIT reiterates that the Advisory Committee and the Navajo Nation Code defined its predecessor, the Navajo Skill Center, as "an entity of the Navajo Nation." 15 N.N.C. § 1201 (1984-85 Supp.). See also, *Navajo Skill Center v. Benally*, 5 Nav. R. 93 (1986) (finding Navajo Skill Center as an entity of the Navajo Nation). This raises the question of whether under section 552 of the Sovereign Immunity Act, the terms "enterprise" and "entity" are interchangeable. We conclude they are not.

The Navajo Nation Code differentiates between the terms enterprise and entity. For example, this distinction is made at 1 N.N.C. § 501, where Navajo Nation officials are required to use the term "Navajo Nation": "The President of the Navajo Nation and all departments, divisions, agencies, *enterprises*, and *entities* of the Navajo Nation shall use the phrase Navajo Nation in describing the lands and people of the Navajo Nation." (emphasis added). Furthermore, the Navajo Nation Code specifically establishes the "enterprises" of the Navajo Nation such as the Navajo Arts and Crafts Enterprise, the Navajo Forest Products Industries, the Navajo Agricultural Products Industry, the Navajo Nation Hospitality Enterprise, the Navajo Engineering and Construction Authority, and DINETECHS Enterprise. 5 N.N.C. §§ 1501-1991 (1995). CIT is not identified anywhere in the Code as an enterprise of the Navajo Nation.

A prominent law dictionary also distinguishes between the two terms. *Entity* is broadly defined as "[a] real being; existence." *Black's Law Dictionary* 477 (5th ed. 1979). *Enterprise*, on the other hand, has a narrower definition: "A venture or undertaking, especially one involving financial commitment." *Id.* at 476. For the reasons stated, CIT was not covered by the Sovereign Immunity Act's umbrella of "enterprises of the Navajo Nation" in April 1995. 1 N.N.C. § 552(M) (1995).

### B. Power of the Advisory Committee

The Advisory Committee created CIT as an entity of the Navajo Nation and granted it immunity from suit. CIT correctly states that the Committee had the power to create CIT as an entity of the Navajo Nation. The dispute is over the Advisory Committee's alleged power to amend the Sovereign Immunity Act and confer immunity on CIT. We conclude the Advisory Committee did not have that power.

In 1987, the Advisory Committee passed a resolution adopting CIT's plan of operation. The pertinent provisions of that plan state as follows:

> A. This Corporation is organized as a non-profit, non-membership corporation, wholly owned by the Navajo Tribe, and organized exclusively for educational and charitable and governmental purposes.
>
> B. The Corporation is a constituent agency of the Navajo Tribal government and is to be considered part of the "Navajo Nation" for purposes of the Navajo Sovereign Immunity Act (citations omitted).

Advisory Committee Res. No. ACJA-7-87; Plan of Operation, Art. II. A.B.

The Navajo Nation Council granted the Advisory Committee both general and enumerated powers. The Committee had the "general authority (as specifically provided herein), to act for the Navajo Tribal Council at such times when the Navajo Tribal Council [was] not in session." 2 N.N.C. § 341(b)(1) (1984-85 Supp.). Under its enumerated powers, the Committee had the power "[t]o create any enterprise, college, ONEO, or other entity of the Navajo Nation by adoption of its Plan of Operation, and to amend or rescind that Plan, and to amend, or rescind the Plans of Operation of any entity already created by the Navajo Tribal Council." 2 N.N.C. § 343(b)(1) (1984-85 Supp.). CIT argues that because the Advisory Committee conferred immunity on it while acting for the Navajo Nation Council, and through amendments to its plan of operation, the Committee's actions were legal under its general and enumerated powers.

CIT's argument contradicts the Sovereign Immunity Act. The Act provides that "[t]he Navajo Nation may be sued only in the Courts of the Navajo Nation when explicitly authorized by Resolution of the Navajo Nation Council." 1 N.N.C. § 554(B) (1995). By enacting that law, the Navajo Nation Council, as the governing body of the Navajo Nation, reserved to itself a monopoly on granting and waiving the Nation's immunity from suit. Thus, from the outset, the Act undercuts CIT's claim that the Advisory Committee had the authority to grant it immunity from suit. Likewise, the Committee did not have the power to waive the Nation's immunity. Of course, if those powers were explicitly granted to the Committee, it would have had the authority to do both, but as explained below, we find no such grant in either the Committee's general or enumerated powers.

The Advisory Committee's general powers were limited to those "specifically provided herein," and included:

> (1) [T]o act for the Navajo Tribal Council at such times when the Navajo Tribal Council [was] not in session.
> (2) Monitor and coordinate the activities of all divisions, departments, and enterprises of the Navajo Nation.
> (3) Develop an agenda for the Navajo Tribal Council and recommend legislation to the Navajo Tribal Council.
> (4) Deal with all matters relating to the sale, lease, exchange, or other use of lands, including unrestricted (fee) land of the Navajo Nation.

(5) Review and approve all federal programs proposed by the Navajo Nation.

(6) Review pending federal legislation affecting the Navajo Nation.

(7) Coordinate all federal programs with all other concerned standing committees of the Navajo Nation to provide the most efficient delivery of services to the Navajo peoople.

(8) Approve and supervise Navajo participation in the implementation of the Indian Self-Determination Act ... and other comparable federal legislation.

2 N.N.C. §§ 341(b)(1)-(8) (1984-85 Supp.). Not a single general power can be read as giving the Advisory Committee the power that CIT proposes.

Moreover, when conferring immunity from suit on CIT, the Advisory Committee attempted to amend the Sovereign Immunity Act. The Committee's conduct would have the effect of amending the Act, because the Act's definition of "Navajo Nation" failed to include entities like CIT. The Committee had only the limited power of recommending legislation, 2 N.N.C. § 341(b)(3), and not the power to amend the Act. It exercised this power in 1986 when it proposed amendments to the Sovereign Immunity Act. Advisory Committee Res. No. ACN-180-86. The Navajo Nation Council followed the Committee's recommendation and enacted the amendments. Navajo Nation Council Res. No. CD-60-86 (December 11, 1986) (authorizing redress for wrongful deprivation or impairment of civil rights). The Committee acknowledged it lacked the power to amend the Act when it followed this "recommendation" procedure.

In 1987, the Advisory Committee used its enumerated power at section 343(b)(1) to amend CIT's plan of operation and confer immunity from suit on CIT. The relevant amendment stated that CIT "is to be considered part of [t]he Navajo Nation for purposes of the Navajo Sovereign Immunity Act." (internal quotations and citations omitted). Plan of Operation, Art. II.B. CIT purports that the Committee's grant of immunity is legal, because it was accomplished in amendments to CIT's plan of operation.

While section 343(b)(1) gave the Advisory Committee the explicit power to amend CIT's plan of operation, it did not give the Committee the explicit power to confer immunity from suit on a government entity. Therefore, the Advisory Committee's act of granting CIT immunity from suit is illegal. Moreover, the important governmental functions of granting immunity from suit and amending the Sovereign Immunity Act are improper subjects for a plan of operation. Finally, after assessing the Advisory Committee's other enumerated powers, we cannot find an explicit grant of power which would have allowed the Committee to confer immunity on CIT.

## III

CIT gained immunity only after the Navajo Nation Council passed its July 21, 1995 resolution. Therefore, Blaze was not required to fulfill the statutory pre-

requisites for filing suit on its contract claim. Finally, while we are sensitive to the dissent's argument that CIT is immune from suit under federal law, that point was simply never raised in the record before this Court. Nonetheless, we are confident the parties and the district court will find a satisfactory solution to this case. The Crownpoint District Court's decision is reversed and the case remanded for further proceedings.

\* \* \* \*

YAZZIE, Chief Justice, concurring and dissenting in part.

While I agree with the majority that the Advisory Committee did not have the authority to confer sovereign immunity upon the Crownpoint Institute of Technology during the period of time this claim arose, we must always read statutes in light of their contemporary history and the intent of the Navajo Nation Council or a committee vested with specific powers. What was the Advisory Committee's intent when it established the Institute and other educational institutions, such as the "contract schools"? It was to establish an entity which could receive funding under the Indian Self-Detemination and Education Assistance Act of 1975.

The definitions section of the Act, at 25 U.S.C.A. § 450b(c) (1983), establishes criteria for a "tribal organization" or "legally established organization of Indians which is controlled, sanctioned, or chartered" by the governing body of an Indian nation. See, 25 U.S.C.A. § 450b(1) for 1988, 1990, 1994 amendments (Supp. Pamphlet, 1997). Such organizations are eligible for contracts with the Secretary of the Interior and Department of Health and Human Services, and grants. 25 U.S.C.A. §§ 450f-450h (1983), (Supp. Pamphlet, 1997).

The Act goes on to provide that a "tribal organization" waives its sovereign immunity, but only to the extent of liability insurance coverage. 25 U.S.C.A. §§ 450f(c), 450g(c) (1983). Accordingly, the Crownpoint Institute of Technology has the benefit of the residual sovereign immunity granted by the Indian Self-Determination and Education Assistance Act of 1975, as amended. That is precisely what the Advisory Committee intended when it established the Crownpoint Institute of Technology as an "entity" of the Navajo Nation. While the Institute may not have the advantage of *Navajo Nation*-conferred sovereign immunity for the period in question, there was certainly the intent to confer *federal* sovereign immunity upon the organization. The Institute is an education organization which falls under the federal statute.

A contract outlines expectations. On remand, the trial court should closely examine the contracts and agreements between Blaze Construction and the Institute to see what the expectations of the parties were as to remedies for breach. While there may be a waiver of sovereign immunity for certain purposes, there is a distinction between waivers for purposes of suit and the ability to

execute on the judgment. Since the Indian Reorganization Act of 1934, there have been clearly defined distinctions between the ability to sue and the ability to execute upon "assets pledged" or the monies allocated in insurance policies. I do not believe that the Advisory Committee intended that the Institute's assets and physical plant would be subjected to execution, and I would not want to give the trial court *carte blanche* to put the Institute's buildings up for sale in the event it finds liability. I recommend that the trial court carefully assess the agreements of the parties on this point.