*Mari Racheal ALLEN*
Appellant
*vs.*
*FORT DEFIANCE HOUSING CORPORATION*
Appellee
In the Supreme Court of the Navajo Nation

No. SC-CV-05-05

December 14, 2005

Josephine Foo, Farmington, New Mexico, for Appellant.

Sampson Martinez, Gallup, New Mexico, for Appellee.

Before FERGUSON, Acting Chief Justice, and HOLGATE and SLOAN, Associate Justices.

This opinion concerns whether the Judicial Reform Act repealed a provision in the Forcible Entry and Detainer statute mandating treating an appeal as a "new case." The Court holds it did not, and therefore will review a district court's factual findings *de novo* consistent with the procedures announced in this opinion.

## I

This case has been before the Court several times, and its tangled history need not be repeated here. *See Fort Defiance Housing Corp. v. Allen,* 8 Nav. R. 492 (Nav. Sup. Ct. 2004). The facts relevant to this opinion are that Appellant Mari Rachael Allen (Allen) appealed her eviction from her home, and filed a motion for clarification. In her motion, Allen asks this Court to clarify the meaning of a provision in the forcible entry and detainer statute that states that this Court will hear an appeal as a "new case." 16 N.N.C. § 1810 (1995). Appellee Fort Defiance Housing Corporation (FDHC) responded to the motion and filed a motion to dismiss, contending that, if a *de novo* hearing is allowed, Allen failed to request one, requiring dismissal of her appeal.

## II

The issue is whether the forcible entry and detainer statute's requirement that the Supreme Court hear an appeal as a "new case" was overridden by the Judicial Reform Act of 1985, which generally eliminated *de novo* review by mandating that he Court hear appeals on the record.

## III

The question in this case involves two conflicting provisions of the Navajo

Nation Code. The forcible entry and detainer statute (FED), passed by the Navajo Nation Council in 1969 (and not amended since then, *see Allen*, 8 Nav. R. at 499, n. 3), sets out the appellate procedure in such cases. As discussed in our prior cases, a party seeking an appeal first must file an appeal bond with the lower court. 16 N.N.C. § 1807 (A)) (1995); *see Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 472–73 (Nav. Sup. Ct. 2004); *Navajo Community Development Corp. v. Sorrell*, 8 Nav. R. 14, 218 (Nav. Sup. Ct. 2002). Once the bond is submitted and approved, the eviction order is stayed pending appeal. 16 N.N.C. § 1808 (1995). The district court judge then prepares a "transcript" of docket entries and transmits it with the record to the Supreme Court. 16 N.N.C. § 1808 (1995).[1] The Supreme Court then hears the appeal as "a new case." 16 N.N.C. § 1809 (1995). Allen argues, and FDHC does not contest, that the language, "new case," in 16 N.N.C. § 1809, requires a full *de novo* hearing on the facts.

On the surface, the *de novo* appeal provision conflicts with a provision of the Judicial Reform Act of 1985 (JRA). That act, among other things, dissolved the Navajo Court of Appeals and created the Supreme Court in its place. Prior to the JRA, the Court of Appeals heard appeals *de novo* and made new factual findings, replacing those made by the lower court. *See* 7 N.T.C. § 803 (1969). However, the JRA generally eliminated *de novo* appeals, limiting Supreme Court review to "issues of law raised in the record on appeal." 7 N.N.C. § 803 (1995). Since the JRA, the Court does not do fact-finding, but gives deference to the lower court's factual findings by reversing such findings only on a showing of "clear error." *See Judy v. White*, 8 Nav. R. 510, 534 (Nav. Sup. Ct. 2004).

The parties disagree on the effect of the JRA on the FED's *de novo* appeal provision. Appellant argues that when the JRA generally repealed *de novo* hearings in 1985, the Navajo Council did not intend to eliminate the FED provision. Allen contends that the FED statute is "unique in many ways from all other civil actions," and therefore was not altered by the JRA. Additionally, Appellant argues the Council's intent to apply the JRA to the FED was not expressed, and that repealing a statute with an implied repealer clause should not be favored without clearly expressed legislative intent. Appellee argues that the JRA's apparent conflict with the FED is enough to demonstrate the Council's intent to eliminate *de novo* appeals.

We have not previously considered the question of repeals of prior statutes directly. When the Navajo Nation Council does not explicitly state its intent to repeal a statute, the Court necessarily must apply imperfect rules to attempt to follow the Council's intended course. The Court must be particularly careful when reviewing whether a specific statute (the FED statute) has been repealed by a general statute (the JRA) in order to avoid unnecessarily dismantling the

[1]  This provision, which is not in conflict with any other statutory provision, means that an Appellant does not need to file a transcript with this Court, and that the district court has the absolute obligation to file the record with this Court. *See Lowe*, 8 Nav. R. at 472 n. 2.

policies the competing statutes implement. There are several rules to be found in *bilagáana* law that might be applied, including one supported by FDHC: the "last in time" rule, which recognizes an implicit repeal of a previous statute by one later in time by a mere conflict between the two statutes. Other rules include one that seeks to reconcile apparent conflicts to retain both statutes, if possible. The Court reviews these outside concepts in light of *Diné bi beenahaz'áanii. See Goldtooth v. Naa Tsis' Áán Community School,* 8 Nav. R. 680, 691 (Nav. Sup. Ct. 2005) ("Through the consideration of various approaches, we come to a solution that brings the parties before us back into harmony and that provides guidance to others within the Navajo Nation consistent with our beliefs and principles.").

We announce the following guidelines to govern our interpretation of statutory conflict. If the plain language of a statute clearly and explicitly repeals a provision in a prior statute, the Court, of course, must consider that provision repealed. However, when the Council has failed to explicitly repeal the prior provision, the Court will not automatically strike it based on the apparent conflict. Instead, the Court will assess the policies behind both statutes. If, based on the policies expressed in the language, structure, and legislative history of the statutes, the statutes can co-exist, we will not recognize a repeal. However, where the underlying policies of the statutes cannot be harmonized, the prior statute must yield. By not recognizing an automatic repeal, this approach recognizes the great responsibility of the Council to carefully consider previous statutes when passing new ones. It also gives deference to those decisions, by not assuming that the Council intended to repeal every old provision merely by passing a superficially conflicting new one. With these principles in mind we turn to the statutes in this case.

## IV

In the instant case, we find the policies of the FED can be harmonized with the JRA. As stated by Allen, forcible entry and detainer claims, when homes are at issue, are unique, as they potentially remove families from a place of central importance in Navajo thinking. *See Fort Defiance Housing Corporation v. Lowe,* 8 Nav. R.463, 473–74 (Nav. Sup. Ct. 2004) (describing place of homes in Navajo thinking). Apparently due to the damaging nature of FED evictions, the Navajo Nation Council mandated *de novo* appeals to help ensure a fair process in FED cases by permitting the appellate court to review the facts again before a home may be taken. As the loss of a home deeply affects Navajo concepts of family and spirituality, *see Lowe,* 8 Nav. R. at 473–74, there is a strong policy to provide significant procedural safeguards before a home is lost, including heightened appellate protections through a new factual review by the Navajo Nation's court of last resort.

In later limiting appeals to questions of the law, the Council announced a competing policy. The JRA did not just change the standard of review for appeals, but redefined the fundamental structure of the Navajo court system. After the

JRA, the lower courts' role is to establish the factual record. *See Allstate Indemnity Co. v. Blackgoat*, 8 Nav. R. 627, 634 (Nav. Sup. Ct. 2005). This policy expresses a separation of functions between the trial courts and appellate court that is integral to the harmony of the Navajo court system. *See In re H.M.*, 8 Nav. R. 572, 580 (Nav. Sup. Ct. 2004). The lower courts are deemed to be the sole fact finders, and the Supreme Court must rely on their findings, absent compelling reason to reject them. As expressed in the JRA, this Court must respect the distinct function and competence of the trial courts.

The Court harmonizes these competing policies by allowing *de novo* review of the facts, but not an entire new trial. To reconcile the need for heightened protections in evictions and for harmony in the judicial structure, the Court will review the evidence as presented to the district court and make its own factual findings. The Court will give no deference to the facts found by the district court, but will not hold a new evidentiary hearing to establish new facts. Instead, in addition to making any legal arguments, the parties may present proposed factual findings in their appellate briefs, based on the exhibits and testimony presented to the district court. Through this process, the parties are required to present all of their evidence to the district court, and cannot introduce new witnesses or documents before this Court. *Cf. Raymond v. Navajo Agricultural Products Industry, Inc.*, 7 Nav. 142, 145 (Nav. Sup. Ct. 1995) (Court will not consider new legal arguments on appeal not raised in district court). We therefore retain the important role of the district court in the process, precluding the treatment of the trial court proceeding as "dress rehearsal," while providing additional safeguards through heightened appellate review.

## V

For the above reasons, we conclude the Judicial Reform Act did not prohibit *de novo* review on appeals of forcible entry and detainer actions. We therefore order the Clerk of the Supreme Court to issue a notice of docketed appeal to begin the briefing process. Though the FED statute does not require Allen to file a transcript, *see supra*, at n. 1, she may do so with her brief if she wishes the Court to consider the full record. If Allen fails to provide a transcript with her brief, and Fort Defiance Housing Corporation believes witness testimony to be relevant, it may file its own transcript with its brief. Otherwise this Court will not consider evidence presented through witness testimony.