OPINION

This matter comes before the Court on Appellant’s appeal of the following four rulings issued by the Crownpoint District Court: a June 8, 2005 Order and June 22, 2005 Supplemental Order in which the dis *33 trict court denied Appellant Navajo Housing Authority’s (NHA) motion to dismiss on the basis of sovereign immunity; a January 20, 2006 Order in which the district court granted Bluffview Resident Management Corporation’s (BRMC) motion for partial summary judgment; and a March 26, 2010 Order on Two Motions and Final Judgment in which the district court denied NHA’s motion to dismiss on the basis that BRMC no longer exists as a corporate entity and motion for relief from judgment, and in which the district court awarded $680,703 in damages after substituting “BRMC et al.” in the caption with “Daniel Johns et al. as board members of the former BRMC and on behalf of the former Bluffview Village Resident Organization (BVRO).”
We vacate the orders and judgment for the reasons set forth below.
I
This matter has been before us once before when the district court dismissed contract-based counterclaims[1] filed by BRMC against NHA on the basis of untimely filing and sovereign immunity. At that time, NHA based its immunity on its Plan of Operations, codified at 6 N.N.C. § 601 et seq. as it was not then included as the “Navajo Nation” in the Sovereign Immunity Act. Following BRMC’s appeal, we reinstated its counterclaims, stating inter alia that pursuant to 6 N.N.C. § 616(B)(1), “NHA is required to waive its immunity from suits in any agreement with another party [and] [e]ven when NHA fails to do so, it lacks immunity under the clear language of Section 616(B)(1).” Navajo Housing Authority v. Bluffview, 8 Nav. R. 402, 415, 4 Am. Tribal Law 700 (Nav.Sup.Ct.2003).
Following remand, on April 18, 2002, BRMC’s corporate status was revoked, whereupon NHA moved to dismiss BRMC et al. ⅛ counterclaims on the basis that the corporate entity no longer exists. The district court denied NHA’s motion, stating that 5 N.N.C. § 3151 permits an extension of corporate life for a definite time for purposes of prosecuting or defending suits.
On October 19, 2004, the Navajo Nation Council amended the Sovereign Immunity Act to expressly “affirm” that NHA is within the definition of “Navajo Nation” for purposes of sovereign immunity. Resolution CO-55-04 (codified at 1 N.N.C. § 552(F)). On July 25, 2005, Section 616(B)(1) of NHA’s plan of operations was amended to include the phrase, “[s]ubject to the Navajo Sovereign Immunity Act.” Resolution CJY-51-05 (codified at 6 N.N.C. § 601 et seq.). Following these developments, on March 16, 2005 NHA renewed its motion to dismiss on the basis of sovereign immunity. In a June 8, 2005 Order and June 22, 2005 Supplemental Order, the district court denied NHA’s motion, stating that pursuant to Blaze Construction v. Crownpoint Institute of Technology, 7 Nav. R. 296, 1 Am. Tribal Law 470 (Nav.Sup.Ct.1997), sovereign immunity must exist at the time the cause of action arises and not when the particular case was filed.
On January 10, 2005, NHA filed its Answer to the Counterclaims in which it asserted affirmative defenses including contributory negligence, failure to mitigate, laches, statute of limitations, superseding and intervening acts, assumption of risk, and failure to join an indispensable party. On November 18, 2005, BRMC et al. moved for partial summary judgment on its breach of contract counterclaim. BRMC et al. also served complex interrog- *34 atones on NHA, and when NHA failed to respond, on December 19, 2005 BRMC et al. moved for a default judgment. A hearing on the motions was set for January 18, 2006.
NHA failed to file a response to the motion for partial summary judgment within the deadline provided by court rules.[2] On the eve of a scheduled motion hearing on January 18, 2006, NHA filed a late response with an affidavit. At the hearing, the district court refused to accept NHA’s written response due to untimeliness. The district court heard argument only on the default judgment. Transcript of January 18, 2006 Hearing, p. 2-6. The court then orally denied the motion for default judgment, but granted the motion for partial summary judgment, stating that it would not allow further argument due to NHA’s late response and the need for finality in a case that had been pending for six years. Id. at 6-7. Two days later on January 20, 2006, the district court issued a terse order reducing its oral ruling to writing but including no findings. On February 14, 2006, BRMC waived its remaining counterclaims. On July 18-19, 2007, the district court held a hearing on the amount of damages.
On August 24, 2007, NHA filed two motions—a motion to dismiss on the basis that BRMC no longer exists as a corporate entity, and a motion for relief from judgment. On March 26, 2010, the district court issued an Order on Two Motions and Final Judgment denying NHA’s motions to dismiss and for relief from judgment and awarding $680,703 in damages. In this final judgment, the district court sua sponte substituted BRMC et al. in the court caption with “Daniel Johns et al. as former board members of, and on behalf of, former BVRO” after finding that BRMC’s officers could not proceed in their individual capacities.”[3] This appeal followed.
Because the district court parsed its dis-positive rulings on sovereign immunity and summary judgment into several orders and used its “final judgment” merely to award damages, we consider the combined rulings of the district court appealed from as final judgments.
II
These issues have been presented for review: (a) whether the district court correctly denied NHA’s motion to dismiss on the basis of sovereign immunity; (b) whether the district court correctly granted BRMC et al.’s motion for partial summary judgment and, if so (c) whether damages were properly calculated; and (d) whether the district court correctly denied NHA’s motion to dismiss on the basis of revocation of corporate status.
III
Sovereign immunity is a jurisdictional defense. Phillips v. Navajo Housing Authority, 8 Nav. R. 751, 756, fn. 3, 6 Am. Tribal Law 708 (Nav.Sup.Ct.2005) citing Johnson v. Navajo Nation, 5 Nav. R. 192, 195 (Nav.Sup.Ct. 1987); Navajo Housing Authority v. Howard Dana and Associates, 5 Nav. R. 157, 160 (Nav.Sup. Ct. 1987). Therefore it is not merely a *35 defense to an action but a jurisdictional bar. We have stated numerous times that before a court can hear a matter, it must have personal and subject matter jurisdiction. See Begay v. Navajo Engineering & Const Authority, 10 Am. Tribal Law 45, 47-48 (Nav.Sup.Ct.2011) (numerous cites omitted). It is self-evident that lacking jurisdiction as a court for any reason, the court may not proceed to the merits. Jurisdiction is a question of law. See Navajo Transport Services, Inc. v. Schroeder, 7 Am. Tribal Law 516, 519 (Nav.Sup.Ct.2007). “Whether summary judgment was properly granted is also a question of law.” Id. citing Benally v. Mobil Oil, 8 Nav. R. 387, 4 Am. Tribal Law 686 (Nav.Sup.Ct.2003). The Court reviews legal questions de novo, with no deference given to the District Court’s legal conclusions. Id. citing Navajo Nation v. Kelly, 6 Am. Tribal Law 772, 774-75 (Nav.Sup.Ct.2006).
IV
Once again, this Court is asked to resolve the issue of NHA’s sovereign immunity which has returned time and again to this Court, first on the basis of NHA’s codified plan of operations, subsequently on the Sovereign Immunity Act, as amended, and NHA’s amended plan of operation. Our rulings have dealt with NHA’s immunity one provision at a time and have consistently gone against NHA. In the most recent instance, our ruling against NHA was issued without unanimity, with the dissent observing that “NHA’s Plan of Operations generally waives NHA’s sovereign immunity, but retains NHA’s immunity from suit for actions seeking to enforce a judgment against NHA.” See dissent in Tso v. Navajo Housing Authority (Tso II), 7 Am. Tribal Law 600, 607 (Nav.Sup.Ct.2007).
In this case, the district court first found NHA immunity from suit on the basis of an exemption provision in its plan of operations but was overruled by this Court in Bluffview in 2003. Following the Council’s express affirmation of NHA within the definition of “Navajo Nation” under the Sovereign Immunity Act in 2004, the district court, relying on Blaze, once again rejected that NHA was immune from suit on the basis that the cause of action accrued before immunity was conferred. We are asked to review this latest rejection of NHA’s immunity by the district court, and do so de novo.
Whether or not an entity is immune goes to subject matter jurisdiction. In Gwendolene Begay v. Navajo Engineering & Construction Authority and the Navajo Nation, 10 Am. Tribal Law 45 (Nav.Sup.Ct.2011) we emphasized, yet again, that a court lacking jurisdiction to sit in judgment over any portion of the matter may not issue any rulings or orders regarding the substance of the matter. Id. at 48. Here, jurisdiction must exist to allow the district court to reach the merits, grant partial summary judgment, and further grant an award of monetary damages. See Navajo Transport Services, Inc. v. Schroeder, 7 Am. Tribal Law 516, 519 (Nav.Sup.Ct.2007) citing Nelson v. Pfizer, 8 Nav. R. 369, 366, 4 Am. Tribal Law 680 (Nav.Sup.Ct.2003) (Before a court can hear a matter, it must have personal and subject matter jurisdiction).
Firstly, we address whether the district court correctly relied on Blaze. Blaze, supra, concerned a Navajo Nation “entity” that the Court found lacked the immunity inherent in Navajo Nation “enterprises.” We held that the full Council properly conferred immunity on CIT in 1995 when it inserted the phrase “is part of the Navajo Nation” in CIT’s plan of operations, codified at 15 N.N.C. § 1202(B). 7 Nav. R. at 301, 1 Am. Tribal Law 470. However, we concluded that CIT was not immune *36 from suit on a breach of contract claim that accrued prior to that time. Id. at 296, 7 Am. Tribal Law 516.
There are significant differences between CIT and NHA’s immunities. CIT needed an affirmative grant of immunity by the Council in order to gain immunity, prior to which it had none. However, it has never been questioned that NHA’s immunity springs from inherent governmental immunities as a public body created to serve “an essential public and governmental purpose” in the area of reservation housing. 6 N.N.C. §§ 616-617. The long-standing argument over NHA’s immunity centers on whether any of its immunity remained as a result of a waiver provision in its plan of operations.
7 N.N.C. § 257 provides: “Jurisdiction of the District Courts of the Navajo Nation shall not extend to any action against the Navajo Nation without the Navajo Nation’s express consent.” This Court found such an express consent at 6 N.N.C. § 616(B)(1) in which the Navajo Nation gives its “irrevocable consent” for NHA to “sue and be sued in its corporate name” so long as the assets of the Navajo Nation, including assets of NHA, are protected from liability. As early as 1987, in Navajo Housing Authority v. Howard Dana and Associates, 5 Nav. R. 157 (Nav.Ct.App.1987), we found that Section 616(B)(1) is a waiver of the NHA’s immunity with respect to the right to be free from suit, but also found that the waiver was qualified by another provision in NHA’s codified plan. 6 N.N.C. § 623 of NHA’s plan exempts all property and funds held by NHA from “execution or other judicial process.” ... “nor shall any judgment against [NHA] be a charge or lien upon such property.” In Dana, we held that Section 623 “places restrictions on [the Section 616(B)(1) ] waiver, by exempting from levy and execution certain property and funds held by NHA.” Id. at 559. In addition to this Court’s clarification that pursuant to Section 623, all of NHA’s property and funds are immune unless waived by NHA by contract, we required that “[t]he contract language that waives the NHAs immunity from levy and execution must be clear and express, and any ambiguity will not be construed as a waiver of immunity.” Id. Finally, we considered Section 623 to be a conditional limitation placed on the Council’s waiver of immunity that “must be strictly construed in favor of the Tribe.” Id.
In reaching its conclusions, Dana, referenced the Reservation Housing Ordinance of the Bois Forte Tribe whose waiver and exemption provisions were identical to NHA’s provisions. Numerous housing authority laws in federal, state, tribal and local jurisdictions contain almost identical language to NHA’s Section 616 and 623 waiver and exemption provisions with local variations.[4] When “sue or be sued” waiver language is coupled with exemption provisions in such laws, some jurisdictions have applied a test to determine the extent of governmental immunity that is waived. For example, the State of Maryland has long adopted a two-prong test, finding a legislative waiver of immunity as to money judgments ineffective unless the legislature has given its consent for a public agency to be sued and there is “power *37 reposed in the agency for the raising of funds necessary for the satisfaction of a recovery against it” or “funds otherwise available for the satisfaction of judgment.” See, e,g., Katz v. Washington Suburban Sanitary Commission, 284 Md. 503, 397 A.2d 1027, 1032 (1979). Where both prongs are not satisfied, the legislature is deemed to have not waived its immunity as to money claims.
The test for a waiver of immunity as to money judgments in Dana, although not fully articulated, was three-pronged. Pursuant to Dana, the legislature must (1) give its consent to’be sued; (2) the statutory scheme must be examined to see if that consent is subject to conditional limitations; and (3) if subject to conditional limitations, has the governmental body expressly waived those limitations in any method duly authorized by the Council. Additionally, we would add another prong, namely, (4) the legislature must have provided for available funds to satisfy the judgment or otherwise given the governmental body the power to raise such funds specifically to satisfy a money judgment. This four-prong test is as sensible a test as any for use by this Court.
The first prong of this test requiring consent to be sued is clearly met by 6 N.N.C. § 616(B)(1) which gives the Navajo Nation’s “irrevocable consent to sue and be sued.” However, we find that the consent is clearly subject to a conditional limitation under the second prong, since 6 N.N.C. § 623 protects all NHA assets and funds from satisfaction of judgment other than pledges or liens “given by the Authority on its rents, fees or revenues,” which would limit the Nation’s “irrevocable consent” to non-money judgments. The third prong is not met as there has been no indication that any contract-based, duly authorized, express waiver of NHA’s Section 623 immunity exists. Nor is the fourth prong met, as no provision in NHA’s statutory scheme confers on NHA the power to raise funds to satisfy judgments.
In short, NHA has immunity from suits for money judgments. As determined by Dana, the 6 N.N.C. § 616(B)(1) waiver of immunity from suits was a qualified waiver not extending to suits for money judgments unless NHA explicitly and contractually waives its levy and execution immunity against its rents, fees or revenues. Such a contract-based waiver has never been alleged in this case. It is a truism that a court has jurisdiction over a matter only to the extent it has the power to provide remedies.
We find that NHA had sovereign immunity as to money claims at all times relevant to this action. With no legal remedy for damages possible, we find that the district court laeked subject matter jurisdiction to hear counterclaims of BRMC et al. for which money relief was sought, and should have dismissed such counterclaims before reaching the merits. The district court granted partial summary judgment on a breach of contract counterclaim, and asked BRMC (and BRMC agreed) to waive the remaining counterclaims for misrepresentation and breach of the covenant of good faith and fair dealing. Lacking subject matter jurisdiction, the district court had no authority to adjudicate the motion for partial summary judgment or to award damages. The district court’s order granting summary judgment on BRMC’s breach of contract counterclaim is vacated, as is that court’s award of damages.
As the NHA plan of operations has been in place since 1977, litigants and the courts are well aware, or should have been aware, of NHA’s exemption against money remedies from that time.
*38 V
The Court is cognizant that since Dana, a quartet of opinions concerning NHA’s immunity have issued, namely, Navajo Housing Authority v. Bluffview, 8 Nav. R. 402, 4 Am. Tribal Law 700 (Nav.Sup.Ct.2003) (finding a general waiver of NHA’s immunity from suit), Tso v. Navajo Housing Authority (Tso I), 8 Nav. R. 548, 5 Am. Tribal Law 438 (Nav.Sup.Ct.2004) (finding that the conditional limitation provided in 6 N.N.C. § 623 created merely a “limitation on enforcement” akin to a prohibition of enforcement of judgments by garnishment of wages, yet conferred on NHA “statutory exemption” against money judgments that may only be overridden by specific legislation); Phillips v. Navajo Housing Authority, 8 Nav. R. 751, 6 Am. Tribal Law 708 (Nav.Sup.Ct.2005) (finding that NHA had no sovereign immunity pri- or to the 2004 Title 1 amendments); and Tso v. Navajo Housing Authority (Tso II), 7 Am. Tribal Law 600, 603 (Nav.Sup.Ct.2007) (finding that in amended 6 N.N.C. § 623, the Council intended to exempt not only future judgments but to exempt execution on any pending judgment as well). These decisions have done nothing but deepen confusion, and for the below reasons, we overrule this quartet of cases.
Firstly, Bluffview misread Dana and mistakenly viewed 6 N.N.C. § 616(B)(1) as a general waiver of immunity in all suits, rather than a qualified waiver excepting suits for money judgments unless expressly waived by contract, as Dana clearly intended. Bluffview offered no rationale for this departure. Furthermore, by failing to include Dana’s discussion of Section 623 on claims for money damages against NHA in its decision, Bluffview resulted in confusion in later tribunals and in the remand court. Bluffview is overruled in its entirety.
Secondly, Tso I rejected Dana’s holding that NHA’s statutory scheme created a qualified waiver of immunity, and rejected that the exemption was “sovereign immunity,” instead equating the exemption to a limitation of enforcement not unlike a prohibition on garnishment of wages to enforce money judgments. 8 Nav. R. at 556, 5 Am. Tribal Law 438. We find this reasoning flawed, since an absolute immunity from judgment is in no way comparable to limitations in methods of enforcement. At the same time, Tso I termed Section 623 “a statutory exemption” from enforcement of a monetary judgment that requires clear intent on the part of the legislature in order to override. Id. at 556-557, 5 Am. Tribal Law 438. Tso I emphasized that Section 623 was a “statutory exemption” and not “sovereign immunity” because “the Council waived the sovereign immunity of NHA from suit in Section 616.” Id. at 556, 5 Am. Tribal Law 438. In so doing, Tso I read the waiver provision as standing alone. However, the provision was, without doubt, part of the larger statutory scheme that established NHA as a public body. Where a provision is part of such a larger scheme, the whole of that scheme necessarily figures in the interpretation of that provision. We have stated that “[o]ur Navajo Nation laws must be read comprehensively and in combination, not piñón picked for provisions that support a given position.” In the Matter of Frank Seanez, 9 Am. Tribal Law 377, 383-84 (Nav.Sup.Ct.2011). Dana was soundly reasoned. Furthermore, Dana properly considered the provisions in combination within a single statutory scheme. In the absence of Navajo Nation precedents, Dana also properly relied for guidance on the treatment of identical provisions in other jurisdictions. Tso 7’s rejection of Dana being based on no finding of legal error and its internal rea *39 soning otherwise being flawed, Tso I is overruled in its entirety.
Thirdly, Phillips held that NHA had no sovereign immunity prior to the 2004 Title 1 amendments, and therefore the Title 1 amendments “altered the legal landscape” by bringing NHA under the Sovereign Immunity Act by the Council’s inclusion of the phrase “[s]ubject to the Sovereign Immunity Act” in 6 N.N.C. § 623, or the its inclusion of NHA as being within the definition of the Navajo Nation at 1 N.N.C. § 552(P), 8 Nav. R. at 757, 6 Am. Tribal Law 708. Phillips was dismissive of the Council’s efforts to “affirm” that NHA was always covered under the Sovereign Immunity Act, terming the Council’s use of the word “affirm” as “merely an attempt to bolster the position that NHA always had immunity, a position rejected by the Court.” Id. at 758-759, 6 Am. Tribal Law 708. However, Phillips confused NHA’s waiver of immunity (recognized in both Dana and Bluffview) as NHA never having sovereign immunity to begin with. Phillips provided no legal basis for dismissing the Council’s plainly stated intent. Clearly, immunity must exist in order to be waived. It is our finding that the 2004 amendments were intended by the Council to “affirm” NHA’s existing immunity, and that is, in fact, what the amendments accomplished. Additionally, even after the amendments, the “irrevocable waiver” of 6 N.N.C. § 616 continues in force, leaving the legal landscape unchanged. For this reason, Phillips is overruled in its entirety.
We note that it is in the context of its public role that NHA may obligate itself, and independently enter contracts, evict tenants, hold funds and assets, and buy, sell, lease or sublease, and “to sue and be sued.” 6 N.N.C. § 601 et seq. Suits concerning matters of housing are to be almost routinely expected by and against tenants, managers, obligors, and others. It is evident to this Court that the waiver for purposes of suit at 6 N.N.C. § 616(B)(1), read with section 623, was intended to “irrevocably” permit expedited suits in order to benefit the public while safeguarding the public treasury. Under this scheme, petitions for extraordinary relief and injunctive suits are possible, among other non-monetary relief.
It is not lost on this Court that NHA’s 2004 “affirmation” may result in procedural confusion. With that affirmation, we realize that even in a suit for injunctive or extraordinary relief in a pressing housing matter, the plaintiff suing NHA will be confused as to whether notice requirements of the Sovereign Immunity Act have or have not been waived at 6 N.N.C. § 616(B)(1). While it is clear that the Council intended through the 2004 amendments to emphasize NHA’s immunity status in order to protect the public treasury, it is far from clear if the Council intended to impose the timeline and notice requirements of the Sovereign Immunity Act on non-monetary suits filed against NHA pursuant to the Section 616(B)(1) waiver, which is still in place.
In Allen v. Ft Defiance Housing Corporation, 8 Nav. R. 759, 6 Am. Tribal Law 713 (Nav.Sup.Ct.2005), we grappled with two competing procedural statutes, in which the Council’s intent to repeal the former was unclear. In Allen, we adopted an approach that does not recognize automatic repeals when two provisions are conflicting. Allen, supra at 765, 6 Am. Tribal Law 713. We stated that “this approach recognizes the great responsibility of the Council to carefully consider previous statutes when passing new ones. It also gives deference to those decisions, by not assuming that the Council intended to repeal every old provision merely by passing a superficially conflicting new one.” Id.
*40 The original 1977 waiver provision at 6 N.N.C. § 616(B)(1) and the 2005 amendment that included the phrase “[s]ubject to the Sovereign Immunity Act” in that provision were both enacted by the Council, and the Council needs to provide clarification. Petitions for immediate relief, for example, when a tenant seeks immediate necessary relief for himself and his family, cannot be swiftly handled if the notice requirements of the Sovereign Immunity Act were intended to apply, which requires 30 days pre-action notice followed by a 60-day period for the tribe to answer.[5] Section 616(B)(1) has internal conflicting requirements which obviously need to be reconciled. The dilemma is likely to come up before the courts in the future, but the parties and the courts may not understand how to proceed, therefore there is an imminent need for the Council to provide clarity. After the Council enacts statutory clarifications, the courts can address needed changes in our rules and procedures.
Fourthly, Tso II addressed how a judgment issued prior to the 2004 amendments can be collected. In Tso II, we stated that through the 2004 amendments to Title I and 6, the “Council intended for the section 623 amendments to exempt not only future judgments but to exempt execution on any pending judgment as well.” Id. at 603. However, Tso II concluded that judgments already issued constituted a property right that must be paid. Id. We note, again, that the amendments did not substantively change the existing waiver and exemption provisions. The reliance of Tso II on the holding in Phillips as to a changed legal landscape was misplaced. Tso II is overruled as to its conclusion that the amendments changed the status of NHA’s immunity in any substantive way.
We would observe that in this case, the district court granted partial summary’ judgment on January 26, 2006 and awarded damages on March 26, 2010, both well after the Council’s amendments. It need not be much belabored that following the determination in Tso II, the district court should have concluded that it lacked jurisdiction over the damages in this case.
VI
Because we find our discussion on subject matter jurisdiction dispositive, we need not reach the other issues raised in this appeal. However, we would provide this clarifying advice to our lower courts on how summary judgment motions are to be approached.[6] We caution that such motions are never to be treated as default judgments. Rule 56(c) of the Navajo Rules of Civil Procedure requires a finding that the moving party has shown that it is “entitled to a judgment as a matter of law.” This requires a finding of legal sufficiency in the petition or complaint filed by the movant, meaning that the essential elements of the cause of action are met as a matter of law. Additionally, the rule only permits summary judgment to be granted if the “pleadings, deposition, answers and admissions on file, together with affidavits [show] there is no genuine issue as to any material fact” Thus, even if there is no responsive filing to a motion, the court is obliged to examine all pleadings filed in the action to determine if a factual issue exists. In this case, NHA had filed an Answer to the counterclaims that raised *41 numerous affirmative defenses that, on their own, should have sufficed to move a valid action to trial. Finally, the rule provides for a hearing on the motion. Whether or not a responsive pleading is filed, the hearing is essential if only to challenge legal sufficiency.
CONCLUSION
The orders and final judgment of the district court are VACATED. The case is hereby DISMISSED for lack of subject matter jurisdiction.
We further HOLD that our rulings herein apply only to pending proceedings and in no way serves as a basis to disturb concluded matters.

. BRMC’s counterclaims were for breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation.

. See Rule 56(c), N.R. Civ. P. (a party opposing motion must file response within 15 days after service of motion).

. In August 20, 1998, a residential management agreement was entered between NHA and “Bluffview Village Resident Organiza-lion” (BVRO). In documents presented to this Court, BVRO and BRMC are applied to the same entity. BRMC, BVRO and Daniel Johns et al. are one and the same in this appeal.

. For waivers of immunity, see, e.g., 42 V.S.C. § 1404a (Secretary of Housing and Urban Development may sue and be sued); Tex. Loc. Gov't Code Ann. § 392.065 (Vernon 1999) (a housing authority may sue and be sued); 2 Md.Code, Ann. Art. 44A § 1-301 (authorizing housing authority to sue and be sue). For exemptions, see, e.g., RCW 35.82.190 (Washington housing authority exempt from levy and sale by execution); ORS § 456.220 (Oregon housing authority exempt from process or judicial process); NJS 55:14K-35 (New Jersey housing authority exempt from process or judicial process)

. 1 N.N.C. §§ 555(A)(3) and 555(B).

. In Shirley v. Morgan, No. SC-CV-02-10, slip op. at 29 (Nay. Sup.Ct. June 2, 2010), we stated that clarifying opinions may be issued sua sponte in connection with a present suit and imminent future suits on the same matter which may incur large costs. Summary judgment motions are imminent, being frequently filed in a wide range of matters before our courts.