ORDER OF CORRECTION

This matter comes before the Court on its own motion. Based upon our reread after the issuance of the opinion in this case, the Court made a few non-substantive changes and reissues the opinion as attached. The Court changed: 1) “six” to read “five” pay periods on pages 13 and 15, and 2) “CJA-06-10” to read “CF-12-10” on page 11. The corrected opinion, dated January 25, 2011, replaces the first opinion in its entirety.

OPINION

This matter is before the Court following a second Order to Show Cause hearing held on January 20, 2011 concerning the status of Frank M. Seanez as a member of the Navajo Nation bar. On October 22, *379 2010, Mr. Seanez was disbarred by this Court in a detailed opinion in which we found that his actions constituted gross misconduct. On November 24, 2010, we converted the disbarment to suspension upon Mr. Seanez’s request that we reconsider and take this opportunity “to bring the Nation together and restore the harmony so badly needed at this time” in light of “the struggles that have plagued the Navajo Nation over the past two years.” Respondent’s Petition for Reconsideration, p. 3, November 12, 2010. Applying the principle of baa hojoo bá’í yee\ we changed the disbarment to suspension solely on the bases of compassion and restoration. Opinion and Order on Reconsideration, No. SC-CV-58-10, slip op. at 14 (Nav.Sup.Ct. November 24, 2010). We considered the matter concluded.
The matter now returns to this Court with new allegations that Mr. Seanez has engaged in the unauthorized practice of law during his disbarment and subsequent suspension. Namely, he has continued to serve as and draw the full salary of Chief Legislative Counsel (CLC) of the Navajo Nation Council, signing documents and submitting draft resolutions under that title without attorney supervision.
Mr. Seanez appeared and filed his response through Counsel. Additionally, attorneys Mariana Kahn, Ron Haven, Ed McCool, Brian Quint, and Jennifer Skeet in the Office of Legislative Counsel (OLC Attorneys) filed a Response to the Order to Appear and Report on January 14, 2010 upon this Court’s summons for an OLC principal attorney to appear and explain Mr. Seanez’s employment status in that office. The OLC Attorneys have informed the Court that the office had advised the Speaker that Mr. Seanez may not serve as, nor sign documents and draft resolutions as CLC while suspended. Upon review of the response and Mr. Seanez’s reply and argument, the Court issued a verbal decision followed by a short order and now issues its detailed opinion.
I.
Upon the disbarment of Mr. Seanez on October 22, 2010, Mariana Kahn became the Acting Designated Chief Legislative Counsel (Acting CLC) of the Navajo Nation Council. We take judicial notice that when Mr, Seanez submitted his Petition for Reconsideration on November 14, 2010, it was generally understood that Ms. Kahn was the CLC and Mr. Seanez no longer served in that capacity. This was our understanding when we lifted Mr. Seanez’s disbarment and imposed suspension on November 24, 2010.
On January 7, 2011, the Chief Prosecutor of the Navajo Nation filed a Notice alleging that Mr. Seanez has continued to serve as and be paid the salary of the CLC of the Navajo Nation Council during the period following his October 22, 2010 disbarment and November 24, 2010 suspension; has signed as the CLC on documents; and has submitted a draft resolution setting forth the proper procedure for the Council’s selection of a Speaker Pro Tem in his capacity as CLC. On January 10, 2011, this Court issued a Second Order to Show Cause and Order to Cease and Desist in which we ordered Respondent to show cause at a January 20, 2011 hearing why he should not be held in contempt for unauthorized practice of law and violation of our prior orders. We further ordered that the principal attorney in the Office of Legislative Counsel (OLC) appear and explain the continued employment of Respondent as the CLC.
On January 14, 2011 we received a Response to the Order to Appear and Report, filed by the OLC Attorneys including Mariana Kahn, the Acting CLC. The OLC Attorneys provided to the Court copies of *380 legal memoranda that had been provided by Ms. Kahn to the Speaker and Mr. Seanez in her capacity as Acting CLC. In a December 14, 2010 Memorandum, Ms. Kahn had advised the Speaker “that having a Navajo license [is] a basic qualification of the position of Chief Legislative Counsel” and that Mr. Seanez’ conduct in signing documents and submitting draft resolutions as the CLC, “as if he has the active credentials to practice law in the Navajo Nation,” constituted the “unauthorized practice of law.” Memorandum to Lawrence T. Morgan, Speaker, by Mariana Kahn, Acting Designated Chief Legislative Counsel, December 14, 2010. At that time, Ms. Kahn obtained assurances from the Speaker that Mr. Seanez would be removed from the position and would cease to serve as CLC. However, the OLC Attorneys state that nothing was done, and Mr. Seanez continues to be on the payroll and hold himself out as CLC as of January 14, 2011. In a January 11, 2011 Memorandum to Mr. Seanez, Ms. Kahn instructed Mr. Seanez not to return to the Office of Legislative Counsel.
On January 19, 2011, Respondent filed a Reply in which he did not dispute any of the allegations in the Chief Prosecutor’s Notice. However, he stated that he disagreed with the legal conclusions of the Acting CLC and OLC Attorneys and further stated that they were not his supervisors. He contended that none of his actions constitute the practice of law nor has he violated any express order of this Court. He states that pursuant to 2 N.N.C. § 963, the CLC is not required to possess an active Navajo bar license. Contending that he has no duty to resign, he asserts that this Court cannot find him in contempt for continuing to serve as the CLC because there has been no express order issued by this Court for him to resign the position. He claims that only the Council may remove him because he serves at the pleasure of the Council. Finally, he states that drafting legislation and submitting them to the Council using the title of CLC during his suspension does not constitute unauthorized “legal services” under 7 N.N.C. § 606 or 17 N.N.C. § 377.[1]
Mr. Seanez attached to his Reply a Legal Memorandum he submitted to Speaker Morgan at the Speaker’s request which Mr. Seanez signed as “Attorney.” Reply, Exh. A. The Speaker had requested this memorandum for Mr. Seanez to explain the legal ramifications of this Court’s October 22, 2010 disbarment order. In the memorandum, Mr. Seanez provided the sought-for explanation and further, asked to continue as CLC pending the Court’s reconsideration, stating that he would self-regulate his job functions as CLC and refrain from performing functions that in his opinion constitute the practice of law. The Speaker signed his concurrence. Id.
We placed no time limit on Mr. Seanez’s oral argument at the Order to Show Cause hearing on January 20, 2011, which lasted one and one-half hours.
At the hearing, Mr. Seanez denied there was any impropriety in his serving as CLC and being paid the full salary of the CLC while Ms. Kahn was presented to the public as the Acting CLC. He stated that at some point, Mariana Kahn had been removed as Acting CLC and that he was legitimately the CLC. He further stated that none of the OLC Attorneys were his supervisors. When asked whether he was now the supervisor of OLC Attorneys, he *381 did not respond. He stated that he had no obligation to come forward with information that he was still employed as CLC, even when requesting reconsideration of his October 22, 2010 disbarment from this Court.
Contending that the requirement for a Navajo bar license is only relevant if he performs legal services, which he is not performing through self-regulation, he stated that the Acting CLC and OLC Attorneys are wrong and that he is qualified to serve as CLC without a Navajo Nation bar license. When asked if he, as a suspended lawyer working in the OLC, could legitimately disagree with the legal opinion of the Acting CLC which considered his activities legal practice, Mr. Seanez did not respond.
Stating that he was performing only administrative functions, Mr. Seanez asserted that so long as he self-limits his job functions to non-legal work, he violates no law. He stated that the signing of documents and submitting draft resolutions as CLC are not the practice of law within the meaning of 7 N.N.C. § 606(B) if such documents are non-legal documents. However, Mr. Seanez conceded that when draft resolutions are submitted by counsel in the OLC, Council members assume that the resolution has been properly vetted and provided the necessary review as required by the Navajo Nation Council and committee resolutions procedure.
On January 20, 2011 following the hearing, we verbally announced our decision and also issued a short order finding that Mr. Seanez engaged in the unauthorized practice of law in violation of 7 N.N.C. § 606(B). We reinstated our October 22, 2010 order of disbarment of Mr. Seanez and ordered that he immediately vacate his position as CLC. We indicated that we would be imposing sanctions as mandated under 7 N.N.C. § 606 and promised that an opinion setting forth the sanctions and including further findings would be forthcoming.
We now issue our Opinion.
II.
The allegations of the Chief Prosecutor concerning Mr. Seanez’s employment status and actions have not been disputed. The only issues concern whether they constitute unauthorized legal practice within the meaning of 7 N.N.C. § 606 and what affirmative duties, if any, Mr. Seanez has to his client and this Court following his disbarment and subsequent suspension.
a. Submitting Draft Resolutions as the Chief Legislative Counsel
Mr. Seanez claims that his mere drafting of a resolution for the Council is not a “legal practice.” He cites several provisions in the Navajo Nation Code and an opinion of this Court in which non-attorneys and advocates are permitted to perform drafting functions.
However, mere drafting does not reflect the full extent of what was actually performed by Mr. Seanez. The matter drafted proposed a procedure for the selection of a Speaker Pro Tem. Mr. Seanez submitted the draft resolution to the Legislative Branch Chief of Staff in his capacity as CLC. By doing so, as conceded by Mr. Seanez himself, he indicated to the Council that the draft resolution had undergone the necessary review as required by the Navajo Nation Council and committee resolutions process at 2 N.N.C. § 164(A)(1). Mr. Seanez also conceded that Council Delegates would assume that any draft resolution submitted by the OLC would have previously undergone legal review. We note that the draft resolution here was submitted directly by Mr. Seanez, who drafted the resolution, to the Chief of Staff *382 without going through any other review by OLC Attorneys, as Mr. Seanez has denied the authority of any OLC Attorney to supervise his work. It is apparent to this Court that Mr. Seanez simply continued the performance of his previous legislative drafting and review duties for his former clients, the Council, unabated and without supervision. We find that in so doing, Mr. Seanez provided legal representation in a legislative forum and legal services in violation of 7 N.N.C. § 606(B).
b. Signature on documents as the Chief Legislative Counsel
Two documents were provided to this Court, one signed by Mr. Seanez as CLC and another signed by him as “Attorney,” both dated during the period of his disbarment and subsequent suspension. The first was a cover memorandum to a resolution Mr. Seanez drafted, submitting the resolution to the Council. Memorandum to Charles Long, Chief of Staff, Office of the Speaker by Frank M. Seanez, Chief Prosecutor’s Exh. 1 (December 8, 2010). The second provided advice to the Speaker, at the Speaker’s request, on the ramifications of this Court’s disbarment order, and in which Mr. Seanez further requested to stay on as the CLC while performing only administrative duties. Memorandum to Speaker Morgan by Frank M. Seanez, October 25, 2010, Respondent’s Reply Exh. A (October 25, 2010). Mr. Seanez asserts that neither of these documents were legal documents, and he did not engage in the practice of law when he signed them as CLC. We disagree.
Firstly, Mr. Seanez’s October 25, 2010 Memorandum to the Speaker identifies himself as “Attorney” and clearly provides legal advice, not only on the ramifications of our disbarment order, but also on what Mr. Seanez believed constitutes non-legal administrative duties that he could perform during his disbarment. Secondly, Mr. Seanez’s identification of himself as “Chief Legislative Counsel” in the submission of draft legislation to the Council plainly submits the draft legislation as attorney work product.
Although Mr. Seanez possesses a New Mexico bar license, this license does not by itself permit legal practice within the boundaries of the Navajo Nation. It is self-evident that without a Navajo Nation bar license, no individual may hold himself or herself out as an attorney or advocate on the Navajo Nation regarding matters of legal practice on the Navajo Nation. By holding himself out as the CLC in the above instances, Mr. Seanez further held himself out as no less than the top legal representative of the Navajo Nation Council, which is a “legislative forum” under 7 N.N.C. § 606(B) and further provided legal services, thereby violating that provision.
We would further emphasize that the public must be protected from unauthorized legal practices of suspended or disbarred attorneys and advocates, and especially individuals formerly employed in the capacity of Navajo Nation government lawyers such as Mr. Seanez. We hold that these individuals may not represent themselves as attorneys or advocates in any communication with former Navajo Nation clients or public no matter what the content of the communication may be due to the inherent dangers for abuse in their situation. There is ample guidance for such a holding from other jurisdictions. Prohibited conduct of a disbarred or suspended lawyer includes “being present during conferences with clients, talking to clients either directly or by telephone, signing correspondence to clients, contacting clients either directly or indirectly, or being present in the courtroom or present during any court proceeding involving *383 clients.” In the Matter of John E. Wilkinson. 251 Kan. 546, 834 P.2d 1356 (Kan. 1992); In re Petition for Reinstatement of Parsons 849 So.2d 852 (Miss.2002) (proscribed work includes dictating letters and meeting with clients); and In the Matter of Rodney P. Sniadecki, 924 N.E.2d 109 (Ind. 2010) (accepting clients subsequent to Order of Suspension and representing clients while suspended prohibited).
c. Affirmative Duties to the Court
Mr. Seanez asserts that because this Court did not expressly order that he resign as CLC, he did not have a duty to do so. However, it must be emphasized that at the time we lifted Mr. Seanez’s disbarment, it was made clear to the governmental branches and the Navajo Nation public that Mr. Seanez was no longer the CLC. Mr. Seanez had admitted that while Ms. Kahn was presented as the Acting CLC, he was serving as and signing himself as CLC. The secrecy surrounding his continued employment was so encompassing that only the investigations of the Chief Prosecutor brought it to the attention of this Court. The secrecy all but ensured that no express order for Mr. Seanez to vacate the position would be issued by this Court. Under the circumstances, Mr. Seanez had an affirmative duty to inform this Court of his continued employment as CLC and also to ensure that the true circumstances of his employment was put forward in the public view.
When we converted Mr. Seanez’s disbarment to suspension on November 24, 2010, we had done so at Mr. Seanez’s urging that we take “the opportunity to bring the Nation together and restore the harmony so badly needed at this time.” Petition for Reconsideration, p. 3, November 14, 2010. In so doing, we acknowledged our duty to aid in healing and the strong importance of k’é as a duty of Navajo leaders, including our government lawyers. See Shirley v. Morgan, No. SC-CV-02-10, 9 Am. Tribal Law 46, 53 (Nav.Sup.Ct. May 28, 2010). K’é requires that Mr. Seanez’s own behavior reflect the restorative treatment which he sought and received from this Court. K’é, the duty of candor under NNBA Rules of Professional Conduct Rule 3.3, and the duty to serve the public trust are paramount in a government lawyer. By both failing to be forthcoming about his continued service as CLC, and by not querying the Court or any attorney regarding whether his continued employment was permissible, he showed great disrespect to this Court and violated the spirit of our Opinion and Order on Recon,-sideration.
d. Self-Regulation of Legal Practice
Mr. Seanez has asserted he meets the basic qualifications of the CLC with his state bar license alone pursuant to 2 N.N.C. § 963(A), and that neither 7 N.N.C. § 606 nor 17 N.N.C. § 377 are relevant to his position at this time because he has been self-regulating his job functions and self-ensuring that he is not practicing law during his suspension.
There are two issues of major concern with Mr. Seanez’s above position. Firstly, he isolates 2 N.N.C. § 963(A) and applies it without regard to present Navajo Nation governmental policy. Secondly, he apparently works under no attorney supervision and has obtained no legal opinion permitting him to serve as the CLC, approving his administrative duties, or permitting him to self-regulate his functions during his suspension. In actuality, an opposite legal opinion has been provided by the Acting CLC.
We previously noted that Mr. Seanez has shown a pattern of disregarding the whole of our laws in a legally unsound fashion. See Opinion and Order on Re *384 consideration, supra at 5, 11-13. However, he is well able to read our laws comprehensively and in combination when it suits his position, namely, when arguing that resolutions may be drafted by non-attorneys. Our Navajo Nation laws must be read comprehensively and in combination, not piñón picked for provisions that support a given position. Policies evolve over time and are written by human drafters, and the wording of earlier provisions will not reflect the full evolved governmental policy expressed in later provisions, nor will the later provision always repeal the earlier provision. As we stated in Allen v. Fort Defiance Housing Corp., 8 Nav. R. 759, 6 Am. Tribal Law 713 (Nav.Sup.Ct. 2005), this Court will not automatically take one provision over another based on apparent conflict but will assess the policies behind them and see if the underlying policies may be harmonized. Id. at 765, 6 Am. Tribal Law 713. We stated that “this approach recognizes the great responsibility of the Council to carefully consider previous statutes when passing new ones.” Id. In other words, our provisions must be read in whole cloth.
2 N.N.C. § 963(A) was promulgated in 1989 and addresses only the CLC position. 7 N.N.C. § 606 and 17 N.N.C. § 377, both promulgated in 2000, expresses the later governmental policy that all Navajo Nation legal practitioners possess a Navajo bar license. Policies embodied in all three provisions are set forth in the Personnel Classification Plan for the CLC requiring that the CLC hold both a state and Navajo bar license. It has been long settled that only applicants with both such licenses are welcome to apply for and serve in the position. Mr. Seanez’s argument that no Navajo bar license is required for the position of top lawyer for the legislative branch has no merit.
Mr. Seanez states that he was self-limiting his duties to only administrative functions. We state uncategorically that a suspended or disbarred lawyer is not competent to determine himself what is or is not the practice of law. At minimum, there should have been appropriate boundaries set for Mr. Seanez by the Legislative Branch administration with close supervision by attorneys to ensure adherence to these boundaries so that there is no unauthorized practice. Mariana Kahn, the Acting CLC had attempted to establish such boundaries in repeated legal advice to Legislative Branch administration, which was apparently ignored by the Legislative branch administration. We note that pursuant to Resolution CF-12-10, the CLC is given an equivalent legal standing within the Legislative Branch as that of the Attorney General in the Executive Branch. Mr. Seanez while on suspension lacked the authority to reject Ms. Kahn’s advice, and additionally lacked legal competence to replace her advice with his own competing advice. We find that by using his sole legal judgment to regulate and supervise himself in the Office of Legal Counsel, and by replacing Ms Kahn’s legal judgment with his own assessment, Mr. Seanez engaged in the unauthorized practice of law in violation of 7 N.N.C. § 606.
e. Exposure of Clients to Criminal Charges
Mr. Seanez’s conduct has exposed his former clients to potential criminal charges.
The CLC, similar to the Attorney General or the Chief Justice, is required to wear two hats—one in a legal capacity and the other as chief administrator. The job description for CLC sets forth the following specific job functions:
Serves as legal counsel to the Navajo Nation Council; provides comprehensive *385 legal guidance and advice to the Navajo Nation Council, standing committees, boards, commissions, and the Legislative Branch; coordinates with the Department of Justice and other attorneys providing legal services to the Nation; provides advice and counsel, interpretation of law, research, analysis and representation in mediation and administrative hearings; provides training and orientation in specific laws and areas on legal issues; directs and performs complex legal research and analysis of laws, legal precedents and issues.
Drafts, reviews and prepares proposed legislation, reports, legal documents, and correspondence for the Navajo Nation Council and entities of the Legislative Branch; responsible for the codification of Navajo Nation laws, rules and regulations; develops annual work plan and budget for the Office of Legislative Counsel; attends meetings, training and seminars in support of continuing legal education requirements; prepares and submits activity reports to the Office of the Speaker.
Job Description for Chief Legislative Counsel, revised 7/2/2009
Clearly, the great bulk of the job duties of the CLC constitute legal functions which Mr. Seanez may not perform, and which he asserts he did not perform.
As evidenced by Ms. Kahn’s authoritative legal advice and the Response of the OLC Attorneys, there was grave concern in that office that the continued service of Mr. Seanez as CLC, at the salary level of CLC, while another individual was held out to the public as Acting CLC, exposed individuals in the Legislative Branch administration to charges of fraud and other criminal charges. There was concern that Mr. Seanez’s actions constituted the unauthorized practice of law, carrying possible conspiracy charges for the enabling administration. Pursuant to 17 N.N.C. § 376, a person commits unsworn falsification by knowingly concealing any scheme containing false statements in connection with any matter within the jurisdiction of any Navajo Nation department or agency. Additionally, under 17 N.N.C. § 362, there is the offense of “paying or receiving Navajo Nation Government funds for services not rendered.”
We have previously elaborated on the ethical duties of Navajo Nation government lawyers, including the duty of candor and the duty to inform clients when questionable actions may be subject to court challenge. Opinion and Order on Reconsideration, supra, slip op. at 11. By insisting on remaining in the position of the CLC against the legal advice of the Acting CLC, Mr. Seanez exposed individuals in the Legislative Branch administration responsible for his employment to a range of potential civil and criminal charges including fraud, unsworn falsification, paying or receiving Navajo Nation Government funds for services not rendered, and conspiracy in the unauthorized practice of law. Such offenses are not to be taken lightly, given the amount of public funds paid to Mr. Seanez during his disbarment and subsequent suspension. Timesheets for Mr. Seanez from October 22, 2010 through December 31, 2010 submitted to this Court by the Chief Prosecutor show that he was paid a total of $24,204 over five pay periods. Notice, Chief Prosecutor’s Exh. 2. We understand that Mr. Seanez had continued to be on the payroll at least through January 11, 2011, and may not have tendered his resignation as of the date of this opinion.
This information having been brought to our attention by the Chief Prosecutor pursuant to investigations by that office, we assume that the Chief Prosecutor will now determine what criminal charges should be *386 filed against the relevant individuals, including Mr. Seanez, in order to recoup public funds unlawfully expended from such individuals.
III.
SANCTIONS
Based on the foregoing, we find that Mr. Seanez intentionally violated the terms of our Order on Reconsideration, and such violation has not only caused injury to the legal system and legal profession, but has exposed his former clients to potential civil and criminal charges as set forth above. The nature of Mr. Seanez’s misconduct goes to the very heart of the characteristics of candor and k’é that are to be maintained by lawyers practicing on the Navajo Nation.
There are aggravating factors here. Mr. Seanez continues to fail to accept responsibility for his actions and has been purposeful, deliberate and unremorseful in pursuing his present actions. Mr. Sean-ez’s conduct here is essentially, a continuation of actions that led to his initial disbarment. These latest actions coupled with Mr. Seanez’s explanations show that he continues to approach with arrogance our Navajo Nation laws, our court orders, and even the legal opinions of the Acting CLC within his own branch. He has shown gross disdain for the Diñé value system which expects those entrusted with the welfare of the Diñé in ensuring the rule of law to carry such trust with honor.
This Court has inherent authority over attorneys as officers of the court to take disciplinary action against such attorneys, including the power to impose sanctions. See Eriacho v. Ramah Dist. Ct., 8 Nav. R. 598, 5 Am. Tribal Law 469 (Nav. Sup.Ct.2004); Navajo Nation v. MacDonald, 6 Nav. R. 222 (Nav.Sup.Ct.1990); Boos v. Yazzie, 6 Nav, R. 211 (Nav.Sup.Ct. 1990); In re Practice of Law by Avalos, 6 Nav. R. 191 (Nav.Sup.Ct.1990); In re Practice of Law in the Courts of the Navajo Nation, 4 Nav. R. 75 (Nav.Ct.App.1983); In re Battles, 3 Nav. R. 92 (Nav.Ct.App. 1982). Additionally, we have statutory authority pursuant to 7 N.N.C. § 606(C) to impose monetary and other sanctions as follows:
“Persons conducting the unauthorized practice of law shall be subject to civil penalties, including triple the amount of all legal fees, costs, and other funds paid to them by persons to whom they have purported to provide legal representation or other legal services, a civil fine in the amount of five hundred dollars ($500) per occurrence, and, if not a member of the Navajo Nation, will be subject to exclusion from the Navajo Nation.”
7 N.N.C. § 606(C).
Because we have found that Mr. Seanez engaged in the unauthorized practice of law through the self-regulation of his job functions as CLC, sanctions will be based on the salary paid to him out of public funds following his October 22, 2010 disbarment and subsequent suspension.
The Chief Prosecutor submitted time-sheets for Mr. Seanez from October 22, 2010 through December 31, 2010 showing that he was paid a total of $24,204 over five pay periods, Notice, Chief Prosecutor'.-Exh. 2. Even though it is clear that Mr. Seanez has continued to work past this time period, we will limit our calculation of sanctions to the time period of these time sheets, which are part of the court record.
We choose not to impose the sanction of exclusion.
CONCLUSION
Pursuant to the above findings, the Court hereby VACATES its Order of Sus pension dated November 24, 2010.
*387 The Court ORDERS the reinstatement of our October 22, 2010 permanent disbarment of Frank M. Seanez, effective nunc pro tunc as of January 20, 2011. The Navajo Bar Association shall remove the name of Frank M. Seanez from the roll of attorneys and advocates in the Navajo Nation and inform the public of this disbarment.
The Court FURTHER ORDERS that Frank M. Seanez shall vacate the position of Chief Legislative Counsel, effective nunc pro tunc as of January 20, 2011.
The Court FURTHER ORDERS that Frank M. Seanez pay a civil penalty of $72,612, which is triple the amount of the $24,204 salary paid to him by the Navajo Nation between October 25, 2010 and December 31, 2010 as authorized by 7 N.N.C. § 606(C). This penalty shall be payable to the Navajo Nation Supreme Court which shall promptly deposit payments received into the Navajo Nation public treasury.
The Court FURTHER ORDERS that Frank M. Seanez shall not be eligible to be employed by nor enter into contracts with the Navajo Nation, as defined at 2 N.N.C. § 552, in any capacity until the above civil penalty is fully paid.
The Court FURTHER ORDERS the Navajo Nation Controller, Navajo Nation Department of Personnel Management, and Navajo Nation Division of Finance to take whatever actions are necessary to withhold all sums that remain to be paid Mr. Seanez in connection with his employment as Chief Legislative Counsel, which may include payroll amounts, deferred compensation, and any other final financial payout otherwise due to Mr. Seanez as he leaves the service of the Navajo Nation government. Such withheld funds will count towards payment of the $72, 612 civil penalty imposed on Mr. Seanez pursuant to this opinion.
With the reinstatement of the disbarment of Frank M. Seanez and imposition of monetary penalties against Mr. Seanez, this matter is concluded.
We urge members of the Navajo Nation Bar not to ignore the unmistakable message contained in this Opinion. We are now in a period of governmental reform for the benefit of our future generations. Our government heavily relies on Navajo Nation attorneys and advocates. The governmental and justice system in the Navajo Nation require attorneys and advocates who practice in this court comprehensively follow the letter and spirit of our laws and rules of practice and procedure. Especially in this period of reform, attorneys and advocates should accept the responsibility of heightened duty to the public trust. We expect and will accept no less.

. 17 N.N.C: § 377 lists the unauthorized practice of law as a criminal offense. As this provision was not relied on by this Court in its previous orders, the Court will not proceed under this provision.